WARD FURNITURE MANUFACTURING COMPANY v. ISBELL.

Opinion delivered February 4, 1907.

1.   CONTRACT—ENTIRETY.—Though a contract is entire in form, its entirety may be broken by the concurring acts of the parties.   (Page 559.)

2.   SALE—EFFECT OF PARTIAL ACCEPTANCE.—Where there was evidence that the parties to a contract for sale of lumber elected to treat it as divisible, it was error to instruct that acceptance of a material part of the lumber would be an acceptance of the whole.   (Page 560.)

3.   SAME—VENDEE'S DUTY TO INSPECT.—Under an executory contract for the sale of a quantity of lumber, of a certain kind and quality, it is the vendee's duty to make proper inspection of the lumber within

a reasonable time after same was received; and if he fails to make reasonable inspection and report same, he will be deemed in law to have accepted the lumber. (Page 560.)

4. SAME—VENDEE'S DUTY AS TO ACCEPTANCE.—If a sale of a quantity of lumber by description was entire, the vendee should have accepted all or none; if several, he might accept such as conforms to the contract, and reject the remainder. (Page 560.)

5. SAME—WARRANTY—REMEDIES OF VENDEE.—Where a contract for the sale of lumber specified that the lumber should be of certain age and grade, the vendee, in case the lumber fails to come up to specifications, had three remedies, viz., (1) he might reject the lumber; (2) he might accept same and bring a cross action for breach of warranty, when sued for the purchase price; or (3) he might use the. breach of warranty by way of recoupment in an action by the vendor for the price. (Page 560.)

6. TRIAL—DUTY TO ASK FOR INSTRUCTION.—Appellant can not complain that the trial court failed to give an instruction that was not asked by appellant. (Page 561.)

7. CUSTOM—ESTABLISHMENT.—It was not error for the trial court to refuse to instruct the jury as to the existence of an alleged custom if there was no evidence that such custom had existed a sufficient length of time to have become generally known. (Page 561.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; reversed.

### STATEMENT BY THE COURT.

This suit was brought by appellees against appellant to recover a balance of $686.48 alleged to be due appellees on lumber sold and delivered to appellant. The appellant answered denying any indebtedness to appellees, and by way of cross-complaint alleged:

"That it entered into a contract with plaintiffs to buy between 60,000 and 100,000 feet of lumber from them, to be of what is termed No. 1 and No. 2 common grade, and to be air-dried from 60 days to 6 months; that certain lumber was shipped to it by plaintiffs, but that it was not the grade nor character of lumber it bought from plaintiffs, and that defendant promptly notified plaintiffs of this fact, and refused to accept the lumber that did not come up to contract specifications; that 28,116 feet of lumber so shipped was according to contract, and was accepted by defendant, and that plaintiff's account with it was credited with

the contract price of 28,116 feet of lumber, amounting to $337.39 and the freight thereon, amounting to $65.79, and that, after giving said credit on plaintiff's account, plaintiffs are indebted to defendant in the sum of $209.36 balance due it on account. Appellant alleged that an item of $212.13 for freight was paid by it for appellees on lumber shipped to appellant and rejected. Appellant prayed judgment on its cross-complaint for $209.36 with interest thereon from 16th day of December, 1904.

Appellee's reply to the answer and cross-complaint admits the execution of the contract set up, but denies all the other allegations of the answer and cross-complaint, and alleges that the lumber was sold appellant upon the understanding that no claims were to be allowed against it unless reported at once, and alleges further a custom in Ft. Smith that lumber sold as this was should be inspected at once and report made of same to the seller, and that appellant failed to conform to this custom.

The contract out of which the litigation arose is as follows:

"Sold to Ward Furniture Manufacturing Company 60,000 to 100,000 ft. oak lumber 1 to 2 in. thick from 6 to 20 ft. long at $12.00 per m., f. o. b. mills, 60 days to 6 months old, No. 1 and 2 com., car furniture.

                                    "J. B. Isbell & Co., per Isbell."

The $686.48 sued for represents the purchase price of six carloads of lumber sold by appellees to appellant under the contract. The lumber was shipped from appellees' mill in Sevier County to appellant at Fort Smith, Arkansas. The first carload was shipped November 15, and the last December 7, 1904. With the invoice and the first carload was a letter from appellees saying: "We find that the boys loaded small amount of 2½ in. and 3 in., which was an error in the shipping clerk." On November 30, December 1, December 2 and December 6, appellant wrote appellees expressing dissatisfaction with the lumber that had been shipped as to its age, complained that the lumber was too green, that the railroad had charged extra freight on that account, and asking appellee not to ship any more, etc. The letter of December 6 from appellant to appellees is as follows: "The lumber shipped us has now all come in, and we are unable to find a carload of lumber in the whole lot that will come within the terms of our contract with

you. There is a small portion of lumber in the last car that may be over 60 days cut, but it is mixed up with green lumber. In the first car there was some No. 2 mill culls that appeared to be dry, but nothing that would do us any good. We have instructed our lumberman to unload and pile this lumber, but we can not receive it until it is all sixty days old. Our contract with you called for lumber from sixty days to six months old, and you remember that you informed me, when making the sale, that there would be very little of this lumber but what would be four months old. We are very much disappointed with it, as we wished to use some of it at once, and have not the time to take care of green lumber, as you will remember that I told you that we did not under any circumstances buy green lumber."

To this letter appellees replied (December 8, 1904) "that all the lumber shipped was from sixty days to six months old except a small amount that was about forty days old." Appellee Isbell testified that this letter of December 8 contained all the complaint, so far as he knew, that appellees had to make about what appellant had written as to the condition of the lumber and the disposition appellant proposed to make of it. There was no further written correspondence until February 1, 1905, when appellant wrote appellees as follows:

"We have your statement, which we return. We will render you an account of the green lumber shipped to us on November and December as soon as we have checked it up, which we have now ordered to be done. We wrote you at the time that, inasmuch as the lumber was most all green, we would pile it up and check it out when it had been on sticks 60 days. It is a very tough lot of lumber, and a good deal of it is worthless for our use. However, all of it that is rejected on account of being mill culls will be carefully stacked up, so that you may have it inspected. If we throw out any that can be used in manufacture, or that would not be graded as a mill cull, we shall be pleased to receive it as lumber. There will be some extra freight on account of the lumber shipped to us green."

To this appellees replied February 21, 1905, as follows:

"This is in reply to yours of 2-1 in reference to your lumber account. The cause of delay in replying was the serious illness of Mr. Isbell. You seem to take a very decided stand in

this matter. The lumber was shipped to you just as it was sold to you. You are claiming green lumber was shipped. This is positively not the case, as we had no oak lumber under forty days old, and were not making any oak at the time your shipments were made. There were ten, or possibly twelve, thousand feet of this lumber at the first shipments that were only forty days on sticks, but had positively been on sticks that length of time. The balance of the lumber shipped you was from sixty days to six months old when shipped. Now, we know this to be a fact. Now, what we want you to do is to make settlement on this as invoice, unless you have some lumber that is worthless to you. Let us hear from you along this line with settlement. Unless it is settled within a very few days, we will put it in the hands of an attorney for collection and his fees added.  *  * · * Trusting you will make prompt settlement of this matter, we are," etc.

Witness Isbell was asked this question: "Q. Now, in this letter you told him that you wanted him to pay for the lumber, unless there was some which was worthless to him, and you stated this in answer to a letter written February 1?" And he answered: "Yes, sir; that is right. We don't want anybody to pay for anything that is worthless. If it had been properly inspected when it first arrived, it would have graded up to our contract."

In a letter of February 22, 1905, appellant, writing in reply to appellee's letter of 21st, among other things said: "We intended to inspect this lumber some three weeks ago, but the weather would not permit it," and in a letter of February 27, 1905, appellant said: "As we stated in our former letter, we are now engaged in inspecting the lumber. It is a very poor lot of lumber; will probably be through in about four days," etc. On March 6, 1905, appellant wrote as follows: "We have been over the entire amount of oak lumber shipped to us by you, and find that there are 62,460 feet of mill culls. This lumber is not merchantable, and is worthless for making furniture. This lumber is here for your inspection, and we wish to have some kind of settlement of it at once, as we have quite a little money in it. It is possible that the lumber men would make some kind of an offer for sheeting and dimension stock. The balance of the

lumber, 26,295 feet, we have placed to your credit, although even this is mostly shipping culls, there not being 5,000 feet of No. 1 common in the whole lot. As we said before, the lumber has been a great dissappointment and source of damage to us, and we feel sure that Mr. Isbell did not know the quality of the stuff when he guarantied to us that it was a better lot of lumber than that shipped to us before."

Other correspondence passed, looking to a settlement, but it is unnecessary to set it out.

Appellee Isbell stated that he notified appellant that there were some ten or twelve thousand feet that did not come up to the contract, and that he would have had no objection to appellant's rejection of that if it had settled for the other. There were also some nineteen or twenty other pieces that did not come up to the contract; that the appellees had no objection to appellant's rejection of same. It was testified by appellee Isbell that it was three months and a half from the time shipment began until appellees received a report showing that the lumber had been inspected, and that appellant had other objection to the lumber besides that pertaining to its age. Appellees contend that this report was contained in the letter of appellant to appellees of March 6, 1905.

J. B. Ward of appellant company testified that when the shipments of lumber arrived his inspector made examination of it, and reported to him of its character and condition, and that be notified appellees that, on account of the green condition of the lumber, it would have to be put on sticks to dry, and that he directed that it be put on sticks, and kept for sixty days; that it would have been about the latter part of January or 10th of February before it should have been inspected; that they had it inspected as soon as it was possible to do so on account of weather conditions. They commenced inspecting the latter part of February, 1905, and made the report March 6. It was shown by appellant that on the inspection, which was begun in the latter part of February, and concluded on the 6th of March, 63,755 feet were turned over to one Elliott, an expert inspector, for inspection. He followed the rules for grading and inspecting lumber. He found of mill culls 45,193 feet, and 1,539 feet of No. 1 common and 17,023 feet of No. 2 common, or a total of 18,562 feet of

No. 1 and No. 2 common. But the witness Elliott further testified that it was not possible, if an honest inspection was made of 63,755 feet of lumber represented to be No. 1 and No. 2 common, that there could be as much as 45,000 feet of mill culls in it. Elliott's inspection, in connection with the amount that appellant had placed to the credit of appellees, towit, 28,116 feet, showed that the total amount shipped appellant was 91,935 feet. Some of the 28,116 feet that had been taken out of the 91,935 feet had been used. J. B. Ward for appellant testified that if settlement was made for the lumber under the contract according to the inspection of Elliott, there would be a balance due appellant from appellees of $9.85. Appellees over the objection of appellant were allowed to show that it was the general custom for those who bought lumber in Ft. Smith by the carload to have the same inspected and to make report in about ten days after the shipment, showing the different grades of lumber. There was testimony that no such report was made by appellant to appellees; that appellant only notified appellees that there were some 62,000 feet of mill culls. The following instructions were given by the court:

"The court instructs the jury that, under the evidence in this case, it was the duty of the defendant upon the arrival of the lumber at its yards, or within a reasonable time thereafter, to have the same inspected and notify the plaintiffs of the result of such inspection; and if the defendant failed to do so, and accepted and used a material part of said lumber, it is held to have accepted all of said lumber, and is bound to the plaintiffs for the contract price thereof.

"3. If the defendant, after said lumber had been received by it, complained to plaintiffs that the same was not as old as the contract required and made no other objections, but, notwithstanding the fact, proceeded to use a material part of said lumber, then the court instructs you that that was an acceptance of all of said lumber, measured by the contract price.

"The court instructs you that the lumber in controversy was sold f. o. b. cars at the mill, and that defendant had no right to charge plaintiff with any freight paid by it on said lumber—provided you believe that the defendant accepted all or a material part of the lumber shipped.

"Now, it appears from the contract entered into between the parties to this suit, that the plaintiff sold and agreed to deliver to the defendant from sixty to one hundred thousand feet of oak lumber to be from six to.twenty feet long, from one to two inches thick, and to be of the grade known as No. 1 and No. 2 common. Now, the court instructs you that the defendant would be compelled to pay the plaintiffs for all lumber delivered to it, that is oak lumber, which you may find from the testimony in this case, graded No. 1 and No. 2 common and was from one to two inches thick and from six to twenty feet long, and for no other lumber shipped it by plaintiffs, unless you find from the evidence in this case that the defendant has accepted all the lumber shipped to it by plaintiff, or a material part of it. In that event the defendant would have to pay plaintiffs for all .the lumber shipped; but. unless you find that the defendant has accepted all the lumber shipped it by plaintiffs, or a material part of it, it would have .to pay for only such lumber as it did accept under the terms of the contract, or, rather, only such lumber as came within the terms and conditions of the contract, as I have already stated to you; unless you find that the defendant accepted all the lumber or a material part of it."

Other instructions were given, but the above show the theory upon which the cause was presented.

The verdict and judgment were for $615.48 in favor of appellees. A motion for new trial, reserving exceptions to the ruling of the court in giving, refusing and modifying instructions and in the admission of the testimony as to the custom of inspection, was overruled. This appeal was taken.

*Winchester & Martin,* for appellant.

1. In contracts of this kind, conditions and warranties are held to be the same, and it is immaterial in this case whether the condition in the contract as to grade and the time the lumber was to be air-dried was a condition precedent to appellant's liability, or a warranty; neither is it material whether the contract is executed or executory. 13 L. R. A. 224; 115 U. S. 29 L. Ed. 368; *Id.* 398; 43 Me. 226; 149 Mass. 570, and authorities *postea.*

2. Upon a breach of a contract for the sale of a specific

article of designated quality, by the vendor, the vendee at his election may (1) refuse to receive the article at all, or (2) may receive it and bring a cross action for the breach, or (3) may avail himself of the breach of warranty to reduce the damages in an action brought by the vendor for the price. 48 Wis. 338; 53 Ark. 155; 22 Ark. 454; 45 Cal. 573; 3 Col. 207, 298, 302; 67 Ill. 366; 2 Benjamin on Sales, 6 Amer. Ed. 1155, and notes; 99 N. Y. 517; 9 How. 213; 13 Hun, 514; 15 Penn. 118; 2 Mechem on Sales, § 1398; 118 N. Y. 260; 52 N. Y. 416; 54 N. Y. 587; Story on Sales, § 405; 21 Fed. 164; 36 Ore. 105; 113 Mass. 352; 61 U. S. 15 L. Ed. 850.

3. The court erred in admitting in evidence testimony to the effect that there was a custom amongst Ft. Smith lumber dealers to inspect immediately and report on each car of lumber received, showing the grades and what amount came within the contract and what did not. 27 Am. & Eng. Enc. Law, 719, *et seq.*; 62 Ark. 41.

*Read & McDonough*, for appellees.

1. The contract was executory. On receipt of the lumber, appellant had the right, if it did not possess the qualities stipulated in the contract, to reject it and rescind the sale; but, in order to rescind, it must be done in a reasonable time, and the purchaser must act fairly. Mechem on Sales, §§ 1802, 1377-1380, 1398; 21 Misc. (N. Y.) Rep. 35; *Id.* 465; 29 N. Y. 263; 84 Wis. 53.

2. "There is a difference between a contract for the sale of articles to answer to certain description and a sale of certain specified articles then in the hands of the seller, and described to be of certain grade and quality. In the former case there is, until acceptance by the purchaser, a warranty that the articles shall answer the description, whilst in the latter case no warranty is implied unless an intention to warrant appears." 76 Ark. 177. In this case the material was on hand at the time the contract was made.

If there was a warranty, then, under the pleadings and testimony, appellant had no right of rescission after the lumber had been delivered. Mechem on Sales, § 1805; 104 N. W. 513. The answer does not plead a breach of the warranty, nor ask for

damages by reason thereof, nor does appellant in its testimony attempt to show what its damages have been. 28 Am. & Eng. Enc. of L. 827, note 2; 48 Wis. 338; 4 N. Y. 470; Schouler on Pers. Prop. 610, 611; 23 Pick. 284; 34 Am. Dec. 56; 95 N. W. 862. The burden is on the appellant to show the extent of the damage, and the measure of damages would be the difference between the value of the article warranted and the value of the article actually delivered. Mechem on Sales, § 817.

3. Appellees have not by their conduct waived appellant's acceptance of part of their lumber. Mere silence is not a waiver, nor leniency on the part of him to whom the act is due. Mechem on Sales, § § 1072-3, 1074. Appellant's claim of waiver was not raised in the court below, and can not be raised here for the first time. 49 Ark. 253; 54 Ark. 216; 59 Ark. 312; 60 Ark. 613; 76 Ark. 66; 74 Ark. 252.

4. Evidence as to the custom, if incompetent, was immaterial, and could not have affected the issue, because appellant has not shown where it should recover in any event in this case, and because the court instructed the jury that it was defendant's duty upon the arrival of the lumber at its yards, or within a reasonable time thereafter, to have the same inspected, and to notify the appellant, etc., thereby leaving it to the jury to determine what was a reasonable time.

A judgment that is right on the whole record will not be reversed. 75 Ark. 328; 44 Ark. 556; 19 Ark. 677; 43 Ark. 296; 46 Ark. 542.

WOOD, J., (after stating the facts.) The correspondence shows that appellant notified appellees promptly on receipt of the first carload of lumber that it did not comply with the contract as to age of lumber. Also, as the other cars were received, and after the last car was received, appellant notified appellees that it was "unable to find a car in the whole lot that came within the terms of the contract," and that it "would not receive it until it was all sixty days old." In answer to this letter appellees claimed that the lumber was according to contract except "a small amount." Before the expiration of sixty days appellant wrote appellees letter of February 1, 1905, calling the attention of appellees to the fact that it was a "very tough lot of lumber" and "a good deal of it worthless," and that "all of it that was rejected

on account of mill culls" would be carefully stacked, so that ap-
pellees might have it inspected. This letter stated: "If we
throw out any that can be used in manufacture, or that would not
be graded as a mill cull, we shall be pleased to receive it as lum-
ber." In answer to this, appellees, after again conceding that
ten or twelve thousand feet of the first shipments did not comply
with the contract as to age and after declaring again that the
balance of the lumber shipped was from sixty days to six months
old, continued as follows: "Now, what we want you to do is to
make settlement on this as per invoice, *unless you have some
lumber that is worthless to you.* Let us hear from you along
this line with settlement," etc. Isbell, appellee's manager, when
questioned in regard to this statement, replied: "That is right;
we don't want anybody to pay for anything that is worthless.
If it had been properly inspected when it first arrived, it would
have graded up to contract." Concerning the ten or twelve
thousand feet that did not comply with the contract as to age,
Isbell said appellees had no objection to appellant's rejection of
it if it was not wanted. If appellant had thrown this out and
made settlement for the other, it would have been satisfactory to
appellees.

1. In view of the above and other evidence set forth
in the statement of facts, the court erred in declaring appellant
liable for all the lumber shipped if it accepted a material part
thereof. This declaration was doubtless grounded upon the idea
that the contract was entire, and that appellant, by accepting a
part of the lumber, in law accepted all. But this proposition
ignored all the evidence which tended to show that the lumber
which appellant did accept was after notification to the appellees,
and upon the understanding with them that it might accept the
portion which conformed to the contract, without making itself
liable for that which was not according to the contract, or that
which was *"worthless"* to appellants. The court erred in declar-
ing in effect that under the evidence this was to be treated as an
entire contract, when there was evidence from which the jury
might have found that the parties to it regarded and treated it as
severable. Ordinarily, the contract under consideration would
be construed as an entire contract. But, "even if the contract
would not ordinarily be deemed severable, the parties may by

their conduct so treat it as to show that they regarded it as severable in fact." 2 Mechem on Sales, § 1398. The intention of the parties to the contract is paramount; and, even where the contract according to its language is entire in form, its entirety may be broken by the concurrent acts of both parties. 3 Page, Cont., § 1484; *Russell* v. *Lilienthal*, 36 Oregon, 105. If the contract was entire, and the parties to it by acts done under it did not elect to treat it as divisible in fact, then the acceptance of a material part of the lumber would be an acceptance of the whole. We are of the opinion that it was a question for the jury under the evidence to determine whether or not the acceptance of a material portion of the lumber was the acceptance of the whole, so as to render appellant liable for the whole in a sum measured by the contract price.

2. The contract under consideration was an executory contract for the sale of lumber of specified age and grades. What were the duties and rights of the appellant under it? It was the duty of appellant to make proper inspection of the lumber within a reasonable time after same was received. In the absence of contract stipulations, the rules and customs peculiar to the trade in such cases, if shown, would furnish the proper measure of appellant's duty in the premises. If the contract was entire as to the quantity of lumber designated, it would be the duty of appellant, if all the lumber was according to the contract, to accept and pay for same. But, if the whole or a material portion was not according to the contract, if the contract was entire, appellants should have rejected all or none, and promptly notified appellees of the result of the inspection and the action taken. If the contract was severable as to the quantity of lumber, appellant should have accepted such portion of the lumber as was according to the contract, rejecting any that did not conform thereto. If the appellant failed to make seasonable inspection of the lumber received and to report the result thereof to appellees, it would be deemed in law to have accepted same. The contract specifications as to age and grades of lumber were not merely warranties, but conditions precedent, which gave appellant these rights: (1) if the lumber was not according to contract in these respects, to reject the same, or (2), to accept same and bring cross action for breach of warranty, when sued for

the purchase price, or (3), without bringing cross action for breach of warranty, to use the breach by way of reduction or recoupment in the action by the vendor for the price. *Plant* v. *Condit*, 22 Ark. 454; *Weed* v. *Dyer*, 53 Ark. 155; *Pope* v. *Allis*, 115 U. S. 363; *Morse* v. *Moore*, 13 L. R. A. 224.

The requests of appellant for instructions, however, embodied the idea that, in case the jury should find that appellant accepted all the lumber, in that event appellant would have to pay for all the lumber shipped. It is apparent, therefore, that appellant is not in an attitude to complain, because the court did not present the theory that, in case of an acceptance of all the lumber, if there was a breach of warranty or failure to comply with conditions precedent in the contract, on the part of appellees, appellant might recover in a cross action, or by way of recoupment when sued by appellees for the price of the lumber. If appellant desired the benefit of this theory which it has so ably presented here, it should have asked it in the trial court.

3. In the matter of a particular custom or usage of trade, "all that is required is to show that it is established; that is, that it has existed a sufficient length of time to have become generally known." 12 Cyc. 1034, cases cited in note. There was nothing in the record to show how long the alleged custom had been in vogue. The proof was hardly sufficient to establish a usage among lumber dealers as to the inspection of lumber. The evidence, however, could not have been prejudicial, since the court charged the jury that appellant was required to inspect the lumber within a reasonable time, leaving the jury to say what was a reasonable time under the evidence. The court left the matter of inspection to be determined by the law without reference to the custom, as if no custom had been established. This was correct.

For the error indicated the judgment is reversed, and the cause is remanded for new trial.