MERCHANTS' GROCERY COMPANY v. LADOGA CANNING COMPANY.

Opinion delivered February 22, 1909.

1. CUSTOM—ESTABLISHMENT.—It was eror to admit evidence of a custom not shown to have been in existence a sufficient length of time to become generally known. (Page 595.)

2. SALES OF CHATTELS—BREACH—DEFENSE.—In an action by a vendee to recover damages for failure to deliver merchandise of the quality ordered, it is not competent for the vendor to prove that the merchandise tendered by him to the vendee was subsequently sold to another at an advance over the price at which it was offered to the vendee. (Page 595.)

3. EVIDENCE—MARKET VALUE.—A price list furnished by an individual is not competent to prove the market price of goods, in the absence of proof that it has been accepted and acted upon by dealers. (Page 595.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; reversed.

*J. W. & M. House,* for appellants.

This is purely an Arkansas contract. The order was given upon examination of a sample of the corn shown by appellee's broker to appellant in Little Rock. True, the corn was priced f. o. b. cars Ladoga, Indiana, but that did not make it an Indiana contract. The place of performance was at Searcy, Arkansas, where

the corn was to be examined. There is no question in this case of damage occurring to the corn while in transit. Therefore, the existence of a custom which is proved merely by the secretary of the appellee to be prevalent, if anywhere, in Indiana could have no application to this contract. Moreover, there is no proof that the alleged custom was so general and well known as to be grafted upon and become a part of the contract. It is not shown whether it is general, uniform or long continued. 16 L. R. A. 293; 44 Ark. 213; 12 S. E. 681; 29 S. E. 830; 75 N. Y. 65; 91 Me. 24; 69 Ark. 316; 43 Mo. App. 266; 3 Houst. (Del.) 581; 43 Wis. 277; 115 N. Y. 539; 12 Am. St. Rep. 831, 835-7; 43 Am. St. Rep. 478; 50 Cal. 438; 10 Ind. 35. In a sale of goods by sample there is an implied warranty that the goods are equal in quality, soundness and merchantability to the sample shown. 65 Ia. 390; 3 Ala. 678; 60 Cal. 284; 55 Am. Dec. 321; 13 Mo. 139; 25 Mass. 250.

2. The testimony introduced by appellee to show that the rejected corn was afterwards sold to another company at a higher price was inadmissible and highly prejudicial, because from such testimony the jury were allowed to infer that the rejected corn was worth more than the contract price. 114 N. C. 224.

3. It was error to allow appellee to exhibit to witnesses certain cards purporting to show the price of corn on certain dates, without first showing that they came from a person who was engaged in the business, and that they were genuine, or made by persons having knowledge of the price of corn on said dates.

*Miles & Wade,* for appellee; *M. M. Bachelder* (of Indianapolis, Ind.) of counsel.

1. Not only was it necessary for dealers in canned corn business to establish a custom to meet the conditions prevailing in that business, but such custom is proved in this case by testimony which is uncontradicted. This custom is general, and therefor admissible, and the instruction relative thereto, given by the court, is the law. One who deals in a general market is bound to inquire what its usages are; and he is presumed to have contracted with reference to such customs and usages where they exist. It is competent to show what such usages are. 43 Mo. App. 266; 107 Ill. 419; 28 Ind. App. 539, 541, 542; 110 Ind. 325, 333.

2.   If it was error to admit the testimony relative to the custom, which is not conceded, still it was harmless.   The evidence shows that appellant's agent refused to accept the car of corn on account of swells, and it is clearly shown by the evidence that there were no swells.   If the corn at the time it was placed in the car at Ladoga was substantially the same as the sample, this was a compliance with the contract.   65 Ia. 390; 55 Am. Dec. 322.

3.   This is not an Arkansas contract.   Dunn & Powell were agents of appellee only for the purpose of selling its corn.   All orders sent by them to appellee were subject to its approval and confirmation.   The place of performance is the place where the contract is made.   In this case the place where the order was accepted, Ladoga, Ind., is the place where the contract was made.   Page on Contracts, § 1718; 44 Ark. 215.

BATTLE, J.   On the 24th day of May, 1907, the Merchants' Grocery Company purchased of the Ladoga Canning Company 750 cases of corn, containing 18,000 cans of 1906 packing.   The purchase was made by sample, and the Merchants' Grocery Company agreed to pay fifty-five cents per dozen cans.   The corn was promptly delivered by the Canning Company on the cars of the railroad company at Ladoga, and on or about the 12th day of June following arrived at Searcy, Ark., the home of the Merchants' Grocery Company.   Upon its arrival the car was opened, and the corn was unloaded and hauled a distance of three blocks to the warehouse of the Merchants' Grocery Company, which was engaged in the wholesale grocery business and purchased the corn for its general wholesale trade.   Two days later the Merchants' Grocery Company examined the corn and pronounced it spoiled, whereupon it was reloaded into the car and the entire shipment refused.   This refusal was immediately wired to the Canning Company, which at once wired that the refusal was unwarranted, and the shipment must be accepted.   The Merchants' Grocery Company still refusing to accept the corn, the Canning Company wired to its brokers to resell the corn if possible, and in case of not selling it to ship it to Little Rock for storage.   There being no other dealers in Searcy to buy, the corn was shipped to Little Rock."   On the sixth day of September, 1907, the Merchants' Grocery Company purchased of the Illinois Canning Company 500 cases of corn containing 12, 000 cans of 1907 packing, paying for

it sixty-seven and one-half cents per dozen. The Merchants' Grocery Company then brought this action against the Canning Company for the difference in the price of the two shipments per dozen cans. In a trial of the issues in the action the jury returned a verdict in favor of the defendant; and plaintiff appealed to this court.

There was a conflict of the evidence as to the goods conforming to the contract of purchase, that is to say, the samples by which the sale was made. There was evidence to sustain the verdict of the jury.

In the progress of the trial the appellee was allowed, over the objection of the appellant, to adduce evidence to prove a custom or usage "among the canned goods trade of the country" to the effect that "the buyers shall keep an account of the swells and report to the seller by any given time after the sale of the goods, and the seller shall then reimburse the buyer for such swells;" and not to refuse to take the goods on account of the swells, unless there was "an unreasonable amount of swells." Appellant objected specifically because it was not shown that it had notice of the usage or custom.

The appellee was also permitted to adduce evidence, over objection of the appellant, to prove that it sold the rejected corn to the Penzel Grocery Company for seventy cents by the dozen.

A card published by William Dugdale quoting corn as late as August 17, 1907, from fifty-five to fifty-seven and a half cents, was read as evidence over the objection of the appellant.

Evidence was adduced tending to prove that there was a gradual advance in the price of canned corn all over the country from the 12th of June to the first of September, 1907, and that "the lowest advance that any of the canning factories quoted was about twenty-two and one-half cents per dozen."

The court gave the following instruction, over the objection of appellant, to the jury:

"If you find from the evidence that it is a custom among dealers in canned corn that the buyers shall keep account of all swells and report to the seller by any given time after the sale of the goods, and that the seller shall then reimburse buyer for such swells, and you further find from the evidence that it is also the custom for the buyer not to refuse to take the goods on ac-

count of a moderate quanty of swells, then you are instructed that plaintiff could not reject said goods on account of swells unless the quantity of swells was so great that the custom would not require plaintiff to take them, and that this is true, irrespective of whether there were any swells in the samples."

The evidence adduced to prove a custom or usage was insufficient. Among other things it should have been shown to have been in existence a sufficient length of time to have become generally known. There was no evidence to show how long it had been established. The court therefore erred in giving the instruction copied in this opinion. *Ward Furniture Manufacturing Co.* v. *Isbell,* 81 Ark. 549, 561. The evidence and instruction were prejudicial in that the jury might have inferred from them that appellant should not maintain his action.

The evidence that the rejected corn was sold to Penzel Grocery Company at an advance price was clearly incompetent.

The evidence as to card published by William Dugdale was also inadmissible.

Professor Wigmore says: "A printed list of prices at which a class of goods is for sale to any purchaser, or a printed report of the prices obtained at actual sale in open market, may become trustworthy so far as it is intended to be consulted by all persons who care to know the prices, and has been exposed to a test of accuracy by dealings with such persons on the faith of it, and has further been by their experience found generally reliable. A price-current list or a market report which fulfils these conditions and has thus sufficed for the correct information of persons who transact commercial operations on the faith of it may well suffice for informing a court of justice." 3 Wigmore on Evidence, § § 1704 and 1702.

In *Sisson* v. *Cleveland & Toledo Railroad Co.,* 14 Mich. 489, 496, Mr. Justice Cooley, speaking for the court said: "Evidence of the state of the markets, as derived from the market reports in the newspapers, should not have been excluded.* * * The principle which supports these cases will allow the market reports of such newspapers as the commercial world rely upon to be given in evidence. As a matter of fact, such reports, which are based upon a general survey of the whole market and are constantly received and acted upon by dealers, are far more satis-

factory and reliable than individual entries or individual sales or inquiries; and courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character." See *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 353, 358; *Cliquot's Champagne,* 3 Wall. 114, 141; *Terry* v. *McNeil,* 58 Barb. 241, 247; *Fairley* v. *Smith,* 87 N. C. 367, 371.

It was not shown that dealers in canned goods constantly received and acted upon the Dugdale card, and has thereby proved it worthy of confidence and reliable; and it was not competent evidence.

Reverse and remand for new trial.