ROACH WHOLESALE GROCERY COMPANY *v.* DREYFUS
BROTHERS.

Opinion delivered January 12, 1914.

1.  SALE OF CHATTELS—DISTINCTION BETWEEN ORDER AND SALE.—Where a salesman for appellee took an order for goods from appellant, and the evidence showed that such transactions were not treated

as completed sales, but were subject to the approval of appellee, *held*, the jury was warranted in finding that there was no binding contract of sale between the parties. (Page 625.)

2. USAGE—SALES—EVIDENCE OF.—Evidence that it was the custom of a wholesale house to treat the orders taken by its salesmen as orders only, subject to its approval, is admissible, when known to the plaintiff, in an action for damages for failure to fill an order given by plaintiff. (Page 625.)

Appeal from Polk Circuit Court; *J. T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

This action was commenced before a justice of the peace by the Roach Wholesale Grocery Company against Dreyfus Brothers, to recover damages alleged to have been sustained by the defendant's failure to ship a certain bill of candies. Upon appeal to the circuit court, the case was tried before a jury upon a state of facts substantially as follows:

E. T. Roach testified: I was manager of the Roach Wholesale Grocery Company during the year 1911. Early in the summer of that year, M. Dreyfus, one of the Dreyfus Brothers, was here, and I bought a bill of candies from him. The Roach Wholesale Grocery Company had not been in business long enough to have a published rating, and I so stated to Mr. Dreyfus, and told him that if he preferred, they might issue draft with bill of lading attached. He said he would not do that, as his house had had dealings with me personally in the past, and said that it would be all satisfactory. I gave him the order, and it ran a long time. The goods were to be shipped in thirty days, but were not shipped, and I never heard a word from the house in regard to it. I afterward met Mr. Dreyfus, and told him the candy had not been received, and asked him what was the matter. He asked if the house had not written me, and I told him they had not. He said he would take the matter up with the house. Subsequently, I got a letter from Dreyfus Brothers, dated August 15, as follows:

"Replying to your favor of August 7, we would

thank you to let us know when you gave our salesman an order, and we will investigate the same.''

It was about two months after I had talked with Mr. Dreyfus before I received this letter. In September I received another letter from them, in which they stated they had not shipped the goods because upon investigation they had found our rating to be unsatisfactory.

The testimony of D. R. Dreyfus was taken upon interrogatories, and he testified in answer to them substantially as follows: I am a member of the firm of Dreyfus Brothers, and received an order from the Roach Wholesale Grocery Company in April, 1911. I looked up the rating of said company in the mercantile agencies, and found it was unsatisfactory. I also made other inquiries with regard to the financial standing of the Roach Wholesale Grocery Company, and upon the information given, decided not to extend it any credits, and therefore did not ship the candy to it. All orders are received by us subject to our approval. It is an established custom, and one well understood on the part of traders in general where credit is involved that all orders sent a firm direct, or received through a firm's representatives, are subject to the approval of the firm receiving the order.

E. T. Roach also testified that it was the custom in the wholesale trade, when an order was sent in for the purchase of goods, to investigate the financial standing of the proposed purchaser before the order was accepted and the goods shipped out.

Other evidence will be referred to in the opinion. The jury returned a verdict in favor of the defendants, Dreyfus Brothers, and the case is here on appeal.

*W. M. Pipkin,* for appellant.

1. The deposition of D. R. Dreyfus relating to the particular custom of his house was improperly admitted. In the face of the uncontradicted evidence that the transaction between the parties was a sale, and not an order to be accepted, this evidence tended only to confuse the

issues in the minds of the jurors, and was irrelevant. 11 Enc. of Ev., § 240, and cases cited; *Id.* 174.

2. It was error to so instruct the jury as to leave it to them to determine that there was no contract, but a mere order.

*W. Prickett,* for appellee.

Until accepted, an order for a bill of goods is not a contract of purchase, but merely a proposal which may be withdrawn at any time before acceptance. 74 Ark. 16.

Appellee, on the theory that the transaction was an order merely, had the right to show not only the general custom, but also its own. 77 Wis. 556; 70 Md. 124.

If any part of Dreyfus's testimony was incompetent, appellant should have made specific objection to that part which was incompetent; and an objection to the whole would not be sustained, if part was competent and admissible. 107 rk. 495.

HART, J., (after stating the facts). It was the contention of the plaintiff that the transaction between it and M. Dreyfus was a contract for the sale to it of candies by the defendants. On the other hand, it was the theory of the defendants that the transaction was an order, and did not amount to a sale until the order was accepted by them. The respective theories of the parties were submitted to the jury by the court on proper instructions.

It is the contention of counsel for plaintiff that the undisputed evidence shows that the transaction was a sale, and that therefore the court should have directed a verdict in favor of the plaintiff. We do not agree with counsel in his contention. It is true that the salesman, M. Dreyfus, was a member of the firm of Dreyfus Brothers, and may be, therefore, said to have had authority to have made a sale of the candies. It will be noted, however, that E. T. Roach, the manager of the plaintiff company, refers to the transaction in his testimony as being an order. He says that the goods were to be shipped out in thirty days, yet two months were allowed to elapse before any inquiry was made as to the reason why the

goods were not shipped. It appears from the answer written by the defendant in response to his inquiry that he had spoken of the transaction between them as an order, and not as a contract of sale. They evidently understood it that way, and in subsequent correspondence about the matter, both parties again referred to it as an order. It is shown that it was the general custom in the wholesale trade that, where an order was sent in and credit was involved, the order was subject to the approval of the firm before it was accepted and the goods shipped. Mr. Roach himself admits that he knew this was the custom in the wholesale grocery trade, and the defendants testify that such was the general custom, and their custom in particular, and that, having made an investigation of the financial standing of the plaintiff, and having found it to be unsatisfactory, they declined to accept the order, and so notified the plaintiff. Under these circumstances, the jury was warranted in finding that the transaction was an order, and not a completed sale.

It is next contended by counsel for plaintiff that the court erred in admitting the evidence of D. R. Dreyfus, relating to the particular custom of his firm. As we have already stated, the evidence on the part of the defendants shows that it was the general custom in the wholesale grocery trade to make an investigation of the financial standing of the proposed purchaser before an order would be accepted and the goods shipped. It was also admitted by Mr. Roach that he knew of the existence of this general custom. Therefore, this testimony was competent. *Arkadelphia Lbr. Co.* v. *Henderson,* 84 Ark. 382; *Merchants Grocery Co.* v. *LaDoga Canning Co.,* 89 Ark. 591. It becomes immaterial, then, to determine whether or not the testimony of D. R. Dreyfus to the effect that it was the custom of his firm to make an investigation of the financial standing of proposed customers was competent, for such testimony could not in any event prejudice the rights of the plaintiff, since the general custom in this regard was proved, and the proof of the particular custom could amount to no more than the following of the

general custom. As we have already seen, it was the theory of the plaintiff that the transaction between him and M. Dreyfus for the sale of the candies was a completed sale. On the other hand, it was the theory of the defendant that the transaction in question was not a contract of sale and purchase, but was a mere order given for goods to be shipped after it was first accepted by the firm. The respective theories of the parties were fully and fairly submitted to the jury, and, as we have already stated, we think there was some testimony of a substantial character to support the finding of the jury.

The judgment will therefore be affirmed.