QUEEN OF ARKANSAS INSURANCE COMPANY *v.* MALONE.

Opinion delivered February 2, 1914.

1. INSURANCE—FIRE INSURANCE—PROOF OF LOSS—WAIVER.—Proof of loss required by a policy of fire insurance is waived by the company, when its adjuster denies liability and refuses payment. (Page 232.)

2. INSURANCE—FIRE INSURANCE—REQUIREMENT AS TO SET OF BOOKS.— The clause in a policy of fire insurance requiring the insured to keep a set of books is complied with, if a set of books is kept and preserved until after the fire, from which can be ascertained with reasonable certainty, the value and quantity of the insured property which has been lost or damaged. (Page 232.)

3. INSURANCE—FIRE INSURANCE—IRON SAFE CLAUSE—SUBSTANTIAL COM-
PLIANCE.—A substantial compliance with the iron safe clause in
a fire insurance policy is sufficient; and where the insured showed
that his cash receipts were deposited in a bank and charged on his
books, the facts are sufficient to warrant a submission of the ques-
tion of substantial compliance to the jury.    (Page 232.)

4. APPEAL AND ERROR—GENERAL INSTRUCTIONS—DUTY TO REQUEST SPE-
CIFIC INSTRUCTIONS.—Although the court gave instructions which
were too general, a party can not complain of the same, where he
fails to request correct instructions on the subject.    (Page 234.)

5. INSURANCE—LOSS BY FIRE—IRON SAFE CLAUSE—DUTY TO TAKE INVEN-
TORY.—Where the insured has suffered a loss by fire, an instruc-
tion is proper which imposes upon plaintiff the burden of showing
that an inventory was taken within thirty days from the date
of the policy, and preserved and tendered it to the defendant in-
surance company, or its adjuster, after the fire.    (Page 235.)

6. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—APPARENT SCOPE—RIGHT
TO WAIVE REQUIREMENT IN POLICY OF INSURANCE.—An insurance com-
pany is bound by the act of its agent in waiving a requirement in
a policy of fire insurance, if done within the apparent scope of the
agent's authority, although such act was beyond the actual scope
of the agent's authority.    (Page 236.)

7. INSURANCE—APPARENT AUTHORITY OF AGENT—ACTS OF THE COMPANY.
—An agent of an insurance company is clothed with apparent au-
thority to act for the company in a particular case, when the
company mailed a policy to him, with his name, as agent, endorsed
thereon.    (Page 237.)

Appeal from Monroe Circuit Court; *Eugene Lank-
ford,* Judge; affirmed.

*Manning, Emerson & Morris,* for appellant.

1. Laney was a mere soliciting agent. His declara-
tions are not competent to prove agency. 80 Ark. 228;
93 *Id.* 600; 97 *Id.* 420. Special agents must act strictly
within the limits of their powers. 81 Ark. 202.

2. The peremptory instruction should have been
given. The books were not properly kept. 65 Ark. 336.
A soliciting agent can not waive a forfeiture. 85 Ark.
337; 98 *Id.* 166; 38 S. E. 541; 5 So. 116.

3. The iron safe clause must be complied with. 91
Ark. 310; 83 *Id.* 126.

*John B. Moore,* for appellee.

1.  Proof of loss was waived.  53 Ark. 500; 83 *Id.*
129; 93 *Id.* 49; 72 *Id.* 365.

2.  While declarations of an agent are inadmissible
to prove agency, if the agency be otherwise *prima facie*
proved, they become admissible in corroboration.  31 Cyc.
1655.  Circumstantial evidence of agency is sufficient.  93
Ark. 603.

3.  One who holds one out as his agent is bound.  57
Ark. 203.  Persons dealing with an agent within the ap-
parent scope of his authority must have notice of his real
authority.  57 Ark. 203; 49 *Id.* 320.

4.  The iron safe clause was substantially complied
with.  But it was waived.  157 S. W. 1030; 155 *Id.* 1106.

5.  The jury decided that Laney acted within the
scope of his authority.  81 Ark. 162.

McCULLOCH, C. J.  The plaintiff, Theodore Malone,
was engaged in the mercantile business at Blackton, Mon-
roe County, Arkansas, and obtained from defendant,
Queen of Arkansas Insurance Company, a policy of fire
insurance in the sum of $1,000 on his stock of goods.  The
policy was dated March 14, 1910, and was delivered to
plaintiff two days later.  The fire occurred on the night
of May 31, 1910, and totally destroyed the property cov-
ered by the policy.

Plaintiff gave notes for the premium, one of which
fell due June 2, 1910, and was forwarded for collection,
reaching the place of plaintiff's residence and being pre-
sented to plaintiff for payment the morning after the fire.

Defendant was notified of the loss, and sent its ad-
juster to adjust the loss who, after investigation, denied
liability and refused payment on the ground that the iron
safe clause in the policy had not been complied with by
plaintiff.

This action was instituted to recover the amount of
the loss sustained under the policy.  Plaintiff recovered
judgment below for the sum of $750, and defendant ap-
pealed.

It is first insisted that there can be no recovery for

the reason that proof of loss was not furnished in accordance with the requirement of the policy.

This requirement was waived by the act of the adjuster denying all liability and refusing payment.

The nonwaiver agreement entered into between the plaintiff and the adjuster does not avert the operation of the waiver of proof of loss. *Arkansas Mut. Fire Ins. Co.* v. *Witham,* 82 Ark. 226.

The nonwaiver agreement does not reach to that question, for denial of liability on other grounds is inconsistent with the further requirement to furnish proof of loss. Besides that, the nonwaiver agreement does not, according to its terms, reach to any waiver resulting from denial of liability. It only contains a stipulation against waiver by action of the adjuster "in investigating the cause of the fire or in investigating or ascertaining the amount of loss or damage to the property."

It is next contended that, according to the undisputed evidence, there was no compliance with the iron safe clause, in that the plaintiff did not keep a set of books constituting a record of his business, etc., and that for that reason the court should have given a peremptory instruction in defendant's favor.

Our conclusion is, that the evidence was sufficient to justify the submission to the jury of the question whether the books kept by plaintiff were in substantial compliance with the requirements of the policy.

A statute of this State provides that only substantial compliance with such a provision of a policy is essential. We have reviewed that statute in a great many cases and applied it to varying facts with reference to methods of keeping books. The uniform holding of the court on that subject has been that that clause of a policy is complied with if a set of books is kept and preserved until after the fire from which it can be ascertained with reasonable certainty the quantity and value of the insured property which has been lost or damaged.

Plaintiff was doing a very small business at the village of Blackton, and followed a very crude method of

bookkeeping. He took the inventory required by the policy. The proof which he introduced tended to show that he took the inventory about April 1. There is a conflict in the testimony on this point, but there was enough to warrant a finding in plaintiff's favor on that issue. The defendant adduced testimony strongly tending to establish the fact that the inventory was not made until May 3, which was more than thirty days after the date of the policy and beyond the stipulated time for making it.

The principal contention of defendant with respect to breach of the terms of the iron safe clause of the policy relates to the alleged failure to keep an account of cash sales.

Plaintiff's evidence shows that he kept inventories of purchases and pasted them in a book; that he kept an account of credit sales to his customers and collections thereon, and that he deposited the cash received in the business in a bank and kept the bank account on his books. It does not appear, however, that the deposits were made daily so as to constitute a daily account of cash sales; but that was not necessary if the amounts were deposited and account thereof kept. *Planters' Fire Ins. Co.* v. *Nichols,* 103 Ark. 387. It is sufficient to show that the cash receipts were deposited in a bank and charged on the plaintiff's books, for the account on the books against the bank was sufficient to afford information concerning the cash receipts, and as the accounts against customers disclosed the amount of collections, a deduction of those accounts from the cash account would disclose the amount of the cash sales. This was, as before stated, sufficient to constitute substantial compliance with the terms of the policy. *Queen of Ark. Ins. Co.* v. *Forlines,* 94 Ark. 227. At least, the facts were sufficient to warrant a submission to the jury of the question of substantial compliance. The question was properly submitted in this case, and the verdict of the jury settles that issue in plaintiff's favor.

Error of the court is assigned in refusing to give several instructions requested by defendant submitting

that question. But an examination of the instructions shows that they limited the consideration to literal compliance with the terms of this clause of the policy, and as those instructions entirely ignored the statute which makes substantial compliance sufficient, the court was correct in refusing to give the instructions. It is true that the instructions given on this subject were general ones; but as the defendant failed to request correct instructions on the subject, it is in no position to complain because the instructions given by the court were too general.

Error is assigned in giving the following instruction:

"3. Under the terms of plaintiff's contract with defendant, plaintiff was required to take an itemized inventory of his stock of goods within thirty days from the date of his contract with defendant and preserve same in an iron safe and produce same upon request of defendant in event loss occurred under the policy. Defendant has pleaded plaintiff's failure to make and preserve this inventory as a bar to plaintiff's right of recovery. The plaintiff, in order to recover, must show by a fair preponderance of the testimony that he did within thirty days from the date of the contract sued on, prepare a list of the articles composing his stock of goods, which, in your opinion, was a substantial requirement of this condition of said contract, and that same was preserved by plaintiff and was delivered or tendered to defendant company or its adjuster as its representative after the fire."

It is claimed that this instruction was erroneous because it singled out the issue of failure to make an inventory within the time required in the policy and left the impression on the minds of the jury that that was the only issue with respect to failure to comply with the iron safe clause.

We do not think that the instruction is open to that objection. Aside from the other contention in regard to the failure to comply with the iron safe clause, there was a distinct issue that an inventory had not been taken within thirty days. It was undisputed that the inventory

was taken between the date of the policy and the date of the fire, but there was a sharp conflict in the testimony as to whether or not it was taken within thirty days from the date of the policy as required. This instruction merely submitted that issue, and did not ignore any other issue in the case. It did not state that the plaintiff would be entitled to recover if the jury found that the inventory was taken within thirty days, but it imposed upon plaintiff the burden of showing, in order to recover, that he took the inventory within thirty days from the date of the policy and preserved the same and tendered it to the defendant, or its adjuster, after the fire.

The plaintiff, in addition to his contention that he had substantially complied with the iron safe clause with respect to keeping an account of cash sales, further contends that defendant, through its authorized agent, waived that requirement. He testified in the case that, shortly after he received the policy, he read it over, and, not having any experience in bookkeeping, concluded that it was impossible for him to comply with the policy, so he wrote to W. H. Laney, of Brinkley, Arkansas, through whom he had received the policy, requesting the latter to come to Blackton to see him about it. Laney responded to the letter by coming to Blackton, reached there on May 3. Plaintiff stated to him his inability to keep a set of books in proper manner as required by the policy, and proposed a surrender of the policy on that account. Laney looked over his books and gave him some advice on the subject, and informed him that his method of keeping the books was sufficient except that he should keep a cash account, and instructed him how to do that, saying that if he would do that his bookkeeping "would be all right." From that date on he kept a cash account, showing the daily cash sales. It is contended that even if he had theretofore failed to properly keep his books, this constituted a waiver thereof.

Proof adduced by defendant shows that Laney was merely a soliciting agent with authority to solicit and forward applications and to deliver policies. He had no

actual authority to do anything else for the company. When the policy was issued at the home office in Little Rock, it was endorsed on the back, "W. H. Laney, Agent," and was forwarded to Laney for delivery to plaintiff. Laney delivered it by mail.

The court, at the plaintiff's request, submitted to the jury the question of waiver by Laney's conduct.

While we are of the opinion that the evidence was sufficient to warrant a finding that plaintiff's method of bookkeeping, before Laney undertook to instruct him on the subject, amounted to substantial compliance with the terms of the policy, yet inasmuch as the court admitted testimony tending to show a waiver by Laney, and gave instructions on that subject, we must review those rulings for the reason that we do not know which of these issues the jury determined in plaintiff's favor.

Defendant requested the court to give several instructions to the effect that it was not bound by Laney's acts unless the evidence showed that he was authorized to perform them, and that the alleged waiver was not binding on defendant unless Laney had authority to do so.

These instructions were incorrect, for they limited the question to Laney's actual authority, and not to things within the apparent scope of his authority. It is immaterial whether Laney had actual authority, if his acts and conduct were within the apparent scope of his authority. In other words, if defendant held Laney out to the plaintiff as its agent, with apparent authority to do the things which constituted the alleged waiver, then it is bound by his acts, notwithstanding the fact that they may have been beyond the actual scope of his authority. *Pacific Mut. Life Ins. Co.* v. *Carter,* 92 Ark. 378; *New Hampshire Fire Ins. Co.* v. *Blakely,* 97 Ark. 564.

Laney was, in fact, only a soliciting agent, and not a recording agent with general powers; but under all the circumstances of this case we think that the jury were warranted in finding that he was held out as an agent with general powers.

Counsel for defendant rely upon the case of *American Ins. Co.* v. *Hornbarger,* 85 Ark. 337.

But we think that case does not entirely control this one, the facts being different. The agent in that case was only a soliciting agent and was not held out to the patrons of the insurance company as having any further authority. Here the company itself at the home office mailed out a policy to Laney for delivery to the plaintiff, and endorsed Laney's name on it as agent. Now, this amounted to a representation that Laney was authorized to act for the company as it agent. It is true the word agent is broad in its signification, and may mean either a general agent or one with special and limited authority, and the rule ordinarily is that, even where an agency exists, those who deal with the agent must ascertain the extent of his authority. But in this instance the endorsement of the name of the agent on the back of the policy was sufficient to indicate a continuing authority to some extent to act as agent of the company. If he was only authorized to solicit applications and deliver policies, his authority ended with the delivery of the policy. Therefore, this endorsement necessarily implied some power to act for the company beyond that time, so if he was apparently clothed with authority to act for the company after the delivery of the policy, it implied continuing general powers as agent of the company. We are of the opinion that these circumstances, considered in the light of the duties which were actually imposed upon the agent, were sufficient to warrant a finding that Laney possessed continuing powers and was apparently authorized to act for the company in the matters in which he undertook to act in dealing with the plaintiff. This being true, his conduct in inducing the plaintiff to retain the policy and rely upon the security thus afforded operated as a waiver of prior omissions known to him with respect to the method of keeping books.

We are of the opinion that there was no error in submitting to the jury the question of the alleged waiver by Laney.

Upon the whole, our conclusion is that the case was properly submitted to the jury, and that the verdict is conclusive.

Judgment affirmed.

HART, J., dissents.