WALLACE *v.* RIALES.

4-9291                                      234 S. W. 2d 199

Opinion delivered November 27, 1950.

*Ed B. Cook,* for appellant.

*Claude F. Cooper,* for appellee.

Ed. F. McFADDIN, Justice. This appeal challenges a judgment recovered by a real estate broker for his commission. Appellee, Riales, filed the action against appellant, Wallace, and a trial to a jury .resulted in verdict and judgment for $3,000, the full amount sought.

There was sufficient competent evidence offered by Riales to establish: that Wallace, the owner of lands known as ''Musgrave's Bar,'' agreed to pay Riales five per cent. commission for his services if he disposed of the real estate for $110,000; that Riales interested Dr. Husband as a prospective purchaser who would not pay all cash, but would trade certain Rio Grande Valley property for Musgrave's Bar; that Wallace agreed to such trade brought about by Riales; that the trade was consummated with Wallace receiving $5,000 in cash and a deed to the Rio Grande Valley property, in exchange for his deed conveying the Musgrave Bar property; that Wallace paid Riales $2,500 at the time the deeds were delivered, and agreed to pay the balance shortly thereafter but defaulted; that the price of Musgrave's Bar was $110,000; and that Wallace owed Riales the balance of $3,000.

Appellant, Wallace, on the other hand, contended: that when Riales could not sell Musgrave's Bar for cash, Wallace thereafter was not obligated to pay the five per cent. commission;[1] that when Riales induced Dr. Husband

---

[1] But on this point Wallace testified:

"Q. Now, I believe you stated you did list this land with Mr. Riales for sale?

"A. Yes, sir.

"Q. After it was listed with him did you ever revoke his authority to sell it, or withdraw the listing, or revoke his authority?

and Wallace to trade the properties, Riales was representing both parties, so that Wallace only owed Riales a commission of two-and-a-half per cent.; that the actual value of Musgrave's Bar was $80,000 instead of $110,000; that two-and-a-half per cent. of $80,000 is $2,000, so that Wallace had really paid $500 more than was due by him.[2]

The trial court—with no objections or exceptions thereto shown in the record—instructed the jury in part:

"The defendant admits that he listed the land with the plaintiff for sale, and that plaintiff's authority was not revoked. He admits that plaintiff brought about negotiations resulting in the disposal of said lands. The question for your determination in this case under the evidence is this: Was the value of the property fixed at $110,000 as contended by the plaintiff, or was the value of the property fixed at $80,000, as contended by the defendant?

"A. No.

"Q. You never did that?

"A. No, sir. The only thing, when he would come up to trade I would tell him I wanted cash for it; I didn't want to trade it, when he mentioned the farm Dr. Husband had.

"Q. Yes. But you finally did, you said, get to thinking about it and decided you might trade for the property down in the Valley, and I believe you stated you went back to Mr. Riales and talked to him about trading it?

"A. Yes, sir.

"Q. And you say now his authority as a real estate broker was never revoked, and your listing never withdrawn from him?

"A. That's right; yes, sir. . . ."

[2] On this last mentioned point Wallace testified:

"Q. How do you account for—you paid him $2,500?

"A. I did.

"Q. What did that represent?

"A. It represented part of the two-and-a-half per cent commission.

"Q. Well, why did you pay him part of the two-and-a-half per cent?

"A. I figured he did a pretty good (job) of trading and I would give him $500 extra on it.

"Q. What did you figure you owed him?

"A. $2,000.

"Q. And you paid him an extra five hundred?

"A. That's right.

"Q. Did you ever consider you owed him any more?

"A. I did not."

"If you find from a fair preponderance of the evidence in this case that the price was fixed at $110,000, then your verdict should be for the plaintiff for the sum of $3,000. If you find that the value of the property was fixed at the value of $80,000, then your verdict should be for the plaintiff for $1,500."

As previously stated, there was a verdict and judgment for Riales for $3,000; and on this appeal Wallace makes the four contentions now to be listed and discussed:

I. The appellant says: "The court erred in its refusal to submit to the jury the controverted factual issue of whether or not the original contract between the parties had been terminated . . ." Under this topic appellant argues that even though he listed the property with Riales, still when Riales failed to make a sale *for cash* the contract was ended; and appellant says that such issue of termination should have been submitted to the jury. There are at least two answers to appellant's argument: (a) the appellant—as shown by his testimony previously copied in Footnote (1)—admitted that the contract he made with Riales had not been canceled; and (b) appellant did not request the trial court to submit to the jury any question concerning the termination of the original contract. A party failing to request a definite instruction is in no position to complain that one was not given. See *White* v. *McCracken,* 60 Ark. 613, 31 S. W. 882; *Ward Furniture Manufacturing Co.* v. *J. B. Isbell & Co.,* 81 Ark. 549, 99 S. W. 845; *Queen of Arkansas Ins. Co.* v. *Malone,* 111 Ark. 229, 163 S. W. 771; and *Jones* v. *Seymour,* 95 Ark. 593, 130 S. W. 560.[3]

II. The appellant says: "The court erred in refusing to instruct the jury as to the actual value of the land." Under this topic, appellant argues that the Musgrave's Bar property was actually worth only $80,000 and that he should not be required to pay a commission on a greater amount. We have previously copied a portion of the instructions given by the Court, telling the

---

[3] Other cases on this same point are collected in West's Ark. Digest, "Trial," Key 255.

jury: "If you find that the value of the property was fixed at the value of $80,000, then your verdict should be for the plaintiff for $1,500." The fact that the jury returned a verdict for $3,000 conclusively shows that the jury found that the value was fixed at $110,000. The appellant did not request any instruction embodying his theory of "actual value," and also failed to object to the instruction given by the Court.

III. The appellant next complains of the refusal of the Court to give appellant's requested instructions 2, 4, and 5. Instruction 2 reads:

"You are instructed that a broker is the exclusive agent of the person who hires him; that he cannot represent two principals except by agreement. If, therefore, you find that Mr. Riales was the agent of Doctor Husband then Mr. Wallace would not be liable to him for a commission unless there was a subsequent agreement to that effect."

Instruction No. 4 was a longer one embodying the same general thought; and instruction No. 5 stated that in the absence of a special agreement the broker is entitled only to a reasonable compensation. The trial court was correct in refusing each of these instructions. There was no evidence that Riales was ever the agent of Dr. Husband in any of the transactions, so the requested instructions 2 and 4 were abstract. As to the refusal of the Court to give his instruction 5, appellant is in no position to assign error, because the jury verdict necessarily found that Riales was operating under the agreement with Wallace.

IV. Finally, the appellant says: "The court erred in excluding from the jury the evidence of W. C. Cates." The trial court refused to allow this witness to answer a question, and ruled that it involved a collateral matter. Appellant argues most earnestly that the question and desired answer were not on a collateral matter, but on a matter that would have justified the giving of one of the appellant's refused instructions. Even if it be conceded —for the purpose of argument—that the answer sought to be elicited from Cates was *not* on a collateral matter, nevertheless, the appellant is in no position to complain

about the ruling of the trial court, because the record fails to show what Cates' answer would have been if the Court had allowed him to answer the question.

We have repeatedly held that an objection to the exclusion of testimony cannot be considered on appeal in the absence of a showing of what the testimony would have been. In *Lincoln Reserve Life Ins. Co. v. Morgan,* 126 Ark. 615, 191 S. W. 236, a situation was presented where the witness was asked a question and no answer was given. An error was assigned to the refusal of the Court to allow the witness to answer the question. In holding that the assignment was not well taken, Mr. Justice HART said:

". . . the record does not show what the witness would have answered or that his answers would have been in any wise prejudicial to its rights. It is well settled that a judgment will not be reversed unless it is shown that some prejudice will result to the rights of appellant. Hence, in order to obtain a review of the ruling of the trial court it was necessary to show what the answer of the witness would have been. *Ward v. Fort Smith Light & Traction Co.,* 123 Ark. 548, 185 S. W. 1085; *New Hampshire Fire Insurance Co. v. Blakely,* 97 Ark. 564, 134 S. W. 926; and *Boland v. Stanley,* 88 Ark. 562, 115 S. W. 163."[4]

Such, also, is the rule generally. In 53 Am. Jur. 90, this is stated:

"Thus, refusal of the court to permit a witness to answer questions is not error, in the absence of anything to show what the answers would have been."

We conclude, therefore, that the appellant is in no position to raise any question about the ruling in regard to the testimony of Cates.

We have reviewed the entire case and find no error.

Affirmed.

[4] Cases on this point are collected in West's Ark. Digest, "Appeal and Error," Key 692.