PARK *v.* McCLEMENS, EXCR.

5-2055                                        334 S. W. 2d 709

Opinion delivered April 4, 1960.

[Rehearing denied May 23, 1960]

*Robert M. Lowe, Paul Jones,* for appellant.

*Smith & Sanderson,* for appellee.

PAUL WARD, Associate Justice. This litigation is concerned with the ownership of several bank accounts. Appellant, as the survivor, claimed title to four bank accounts upon the death of her aunt on the ground that they were joint accounts. The trial court held against her contention, hence this appeal. The facts which are somewhat involved but not materially in dispute are substantially as hereinafter set forth.

Mrs. Janie Witten who owned and managed a modest business in Texarkana for many years died testate July 31, 1958, and the appellee, John William McClemens, was appointed the executor of her estate. Prior to her death, on April 24, 1957, Mrs. Witten executed a will in which she left part of her estate to another niece,

Ida Jo McClemens who is at this time a student in school. During several years Mrs. Witten had deposited funds from time to time in two separate banks in Texarkana, which funds are the subject of this litigation. At the time of her death there were these accounts: In the State National Bank there was Savings Account No. 4619 in the amount of $2,259.63 and a checking account in the amount of $2,639.15. In the Texarkana National Bank there was Savings Account No. 4931 in the amount of $2,159.59 and a checking account in the amount of $1,533.90. All the above mentioned funds were placed in the banks by Mrs. Witten and were there held in her name until about the 8th day of August of 1957 when she and appellant signed signature cards which were delivered to the banks. Thereafter the banks placed appellant's name on each account record along with the name of Mrs. Witten which had been there all along. It is, of course, the contention of appellant in this litigation that the effect of placing her name on the above accounts constituted her a joint owner with the right of survivorship.

The record shows that appellant had been living with Mrs. Witten for several months at the time of her death and, apparently believing that the subject funds belonged to her, she withdrew all of them on or about August 2, 1958. The record further reflects, however, that when it became apparent that a dispute over the funds was in the offing she and her attorney, with a commendable spirit of fairness and cooperation, replaced the funds in a bank pending legal determination of the rightful ownership.

This litigation was begun by appellee in Probate Court by agreement with and the cooperation of appellant in order to have the ownership of the funds established. On appeal no questions were raised regarding jurisdiction of the Probate Court. In view of the fact that both parties agreed to submit their differences to the Probate Court we think that Court could take and retain jurisdiction under Ark. Stats. § 62-2409 and

*Hartman* v. *Hartman, Admr.*, 228 Ark. 692, 309 S. W. 2d 737.

Only two issues are raised by appellant: The competency of certain evidence and the effect of the signature **cards.**

*Dead Man's Statute.* As will more fully appear later it was recognized early in the trial that the question of Mrs. Witten's intentions regarding the disposition of her bank deposits might be material, so for that and other reasons appellant was called to testify in her own behalf. At the outset appellee objected to any testimony relative to conversations or transactions which appellant had with the deceased. The pertinency of the objection, based on the Arkansas Constitution, Schedule, Section 2, was conceded by appellant. However, appellant contended and now contends that appellee waived all objections by taking the deposition of appellant. In support of this appellant relies on our opinion in *Smith, Administratrix* v. *Clark,* 219 Ark. 751, 244 S. W. 2d 776. That opinion was rendered January 7, 1952 and was based on Ark. Stats. § 28-401. The following year the Legislature passed Act 335, commonly known as the "Discovery Statute". Section 1 of that Act now appears as Ark. Stats. § 28-348. Subdivision (f) of the said section in part states: "A party shall not be deemed to make a person his own witness for any purpose by taking his deposition". It is contended by appellee that, since appellant's deposition was never introduced into evidence and never used by appellee, appellee did not waive his right to object to appellant's testimony regarding conversations and transactions with the deceased. We do not, however, at this time, pass upon this particular question since it is not necessary to do so. The record shows that when the trial court sustained appellee's objection to the proffered testimony appellee did not place in the record a statement of what appellant would say if allowed to testify. Not having done so appellant is in no position now to ask for a reversal. See *Lincoln Reserve Life Insurance Company* v. *Morgan,* 126 Ark. 615, 191 S. W. 236; *Ward*

v. *Fort Smith Light & Traction Company,* 123 Ark. 548, 185 S. W. 1085; *Wallace* v. *Riales,* 218 Ark. 70, 234 S. W. 2d 199; and *Lynch* v. *Garnes,* 227 Ark. 767, 301 S. W. 2d 739.

*Joint Accounts.* Appellant ably and strenuously contends that the joint signature cards signed by her and the deceased (and delivered to the bank) operated to create joint accounts and that the proceeds of the accounts go to her as the survivor. To support that contention appellant points particularly to the decision of this Court in *Pye* v. *Higgason,* 210 Ark. 347, 195 S. W. 2d 632. The opinion in that case deals with a joint bank account and construes the meaning of Pope's Digest, Section 727a, (the same as Ark. Stats. § 67-521). This section, in all portions material here, reads:

"*When a deposit shall have been made by a person in the name of such depositor and another person* and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the person so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; *and such payment* and the receipt or acquittance of the one to whom such payment is made *shall be a valid and sufficient release and discharge to said bank . . .*" (Emphasis Supplied).

Appellee takes the position here, and the trial court held, that Ark. Stats. § 67-521 should be considered together with the testimony, facts and circumstances disclosed by the record in a case of this kind to arrive at the intent of the depositor. Although, we must admit, the *Pye* case, *supra,* is susceptible of the interpretation placed on it by appellant yet we think the weight of our decisions supports the view of appellee and the trial court. We shall now examine some of these cases.

In *Black* v. *Black,* 199 Ark. 609, 135 S. W. 2d 837, this Court had occasion to consider a "joint account" as affected by § 727a of Pope's Digest (now Ark. Stats. § 67-521). There the Court gave the money to the widow (the survivor) but only because they were husband and wife and not because of the effect of the statute. Among other things the Court said:

"While we think and hold that the widow has title to the bank deposit as surviving tenant by the entirety we do not ascribe her title to this section of the statute. It will be observed that the application of this statute is not limited to deposits by husband and wife, but applies to joint deposits of any two persons, and was, we think, passed for the *protection of the bank* in which the deposit was made. It permits the bank to pay out the deposit in accordance with the *apparent intent* of the depositors, and protects the bank in doing so; . . . *The statute effects no investiture of title as between the depositors themselves* but only relieves the bank of the responsibility and duty of making inquiry as to the respective interests of the depositors in the deposit until one of the joint tenants shall give notice in writing that the joint ownership has been dissolved". (Emphasis Supplied).

This Court again discusses Ark. Stats. § 67-521 in connection with a joint account in *Powell* v. *Powell,* 222 Ark. 918, 263 S. W. 2d 708, and there weighed the evidence bearing on intent. At one place the Court said: "Collateral facts tending to show *intent* are these: (Setting out in detail those facts)". Again it was said: "There is abundant evidence that either before or shortly after the last will was destroyed by Powell he stated that his *intentions* were to have all of the children share in the estate". (Emphasis Supplied). In *Vincent, Administratrix* v. *Vincent,* 224 Ark. 449, 274 S. W. 2d 772, this Court once more approved the introduction of testimony to show the *intent* of a depositor in creating a joint account. It was there said: "Here there is an affirmative finding that Vincent knew what he was doing; that he executed the card for the

purpose of creating the joint tenancy, with survivorship, and if his purpose had been otherwise there was ample opportunity to express a contrary view, or pursue a different course''. In *Tesch* v. *Miller,* 227 Ark. 74, 296 S. W. 2d 392, a joint bank account was created with right of survivorship. The trial court held, under Ark. Stats. § 67-521, the money passed to the survivor. On appeal this Court (at Page 77 of the Arkansas Reports) quoted at great length from the testimony to show the *intent* of the depositor.

Referring back to § 67-521, heretofore copied, the first two lines appear to indicate a situation where a depositor creates a joint account with someone else and not to a situation where a depositor places money in a bank in his own name and later permits the name of another be added to the account. We believe this difference is significant from practical standpoint. In the first instance there can be less doubt as to the intent of the depositor than there is in the latter instance. We think that it is a matter of common knowledge that most people have confidence in the officers of a bank and that few people take the time to read the ''fine print'' written on the back of a signature card. In the case under consideration it would have indeed been difficult for the deceased to have read and understood the exceedingly ''fine print'' on the back of the cards she signed. The record shows that she did not at any time go to the bank or talk with any of the officers of the bank but merely signed the cards that were presented to her. We mention these things because we think they are the basis for the reason why the Court should look into the intent of the signers of a signature card.

As intimated above we think it is significant here that the joint account was not originally created as such. This also seems to be the view expressed in our former decisions. In the *Powell* case, *supra,* the Court in this connection said: ''Here the deposit was not originally *made* by Powell in his and another's name, but assuming, without deciding, that unrestricted directions to the

bank to permit designated persons to check against the balance and to take the remainder following the depositor's death meet the statutory requirements . . ." In *Harbour* v. *Harbour*, 207 Ark. 551, 181 S. W. 2d 805, the Court among other things said: "The Arkansas statute on 'joint accounts' is § 727a of Pope's Digest, and it is predicated on the fact that *the deposit shall be made* 'in the name of such depositor and other person' ". (Emphasis Supplied).

Applying the "intent" rule to the case under consideration we think the trial court must be affirmed. It would unduly lengthen this opinion to set out in detail all the testimony bearing on the intent of Mrs. Witten. Suffice to point out the following. [a] Mrs. Witten had previously executed a will by which she left this property to her younger niece, Ida Jo; [b] She explained why she wanted Ida Jo to have the money— the reason was that Ida Jo was still in school and needed help; [c] She had promised Ida Jo's father (now deceased) that she would look after and take care of Ida Jo; and [d] The lack of any showing that Mrs. Witten read or understood the very small print on the back of the signature cards, or ever gave any directions to any employees of the banks. In view of all of these things we cannot say that the Chancellor's finding that Mrs. Witten did not intend to give the bank accounts to appellant is against the weight of the testimony. We point out also that in any event (and regardless of the intention of Mrs. Witten) the Chancellor's finding must be affirmed in regard to the $2,159.59 Savings Account No. 4931 in the Texarkana National Bank, because there is no language on the signature card creating a joint account with the right of survivorship.

It follows from what we have stated above that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.

ROBINSON, MCFADDIN, GEORGE ROSE SMITH, JJ., dissent.