Beyer *v.* Pope.

5-2949 366 S. W. 2d 716

Opinion delivered April 15, 1963.

*Tommy H. Russell* and *Ruby E. Hurley*, for appellant.

*Holt, Park & Holt,* for appellee.

Paul Ward, Associate Justice. Appellant, Bettye Jo Beyer, and appellee, Eva Victoria Pope, assert rival claims to approximately $9,000 on deposit with the First Federal Savings and Loan Association of Little Rock and approximately $4,500 on deposit with the Peoples Bank and Trust Company of Van Buren. Appellant is the daughter and appellee is the widow of Elmer Pope who died March 9, 1962. Although the building and loan association and the bank were made parties, neither has any further interest in this litigation, so we will hereafter refer to the daughter and widow as appellant and appellee respectively, and we will refer to the building and loan association as association and to the Van Buren bank as bank.

The facts and circumstances leading up to this appeal are hereafter briefly set out in approximately chronological order.

For some time prior to February 14, 1961 Elmer Pope and appellee lived together as husband and wife. On said date Pope filed a suit against appellee for a divorce. At that time Pope had on deposit (in his own name) the sums previously mentioned. No steps were

taken in the suit until January 18, 1962 when a decree of divorce was entered in favor of Pope. A detailed property settlement was embodied in the decree but it has no bearing on the issues here presented.

On February 8, 1962 Pope (while in the hospital) executed a power of attorney authorizing Ruby E. Hurley to "transfer and change" the account in the association and in the bank "to read as follows: Elmer Pope and Bettye Jo Beyer (with full right of survivorship)". In a few days the said accounts were changed in substantial compliance with the terms of the power of attorney.

On February 9, 1962 the divorce decree was annulled, and five days later Pope executed a will leaving all his property to appellee. On the 19th of the same month Pope revoked the power of attorney, and promptly notified the association and the bank to change the accounts back to his name as they were originally.

George Tyler, the assistant secretary of the association, testified in substance: I have a record of Pope's account: On January 16, 1962 it was in the name of Elmer Pope; on February 9, 1962 it was changed to Elmer Pope and Mrs. Bettye Jo Beyer with right of survivorship. The account was later changed to the name of "Elmer Pope". It remained that way until Pope's death on March 9, 1962. J. J. Izard, president of the bank, testified by deposition: A savings account was opened February 1, 1961 in the sum of $9,000 in the name of Elmer Pope: A power of attorney came to me to change the account to make it "or Bettye Jo Beyer or survivor": the account was changed to read "Elmer Pope and Bettye Jo Beyer"—the amount being $4,467.77; later I received a Revocation of Power of Attorney signed by Elmer Pope, dated February 23, 1962; on February 23, 1962 I put the account back in the name of "Elmer Pope", and wrote Mr. Pope the next day that the change had been made. Appellant, who lives in Pennsylvania, received from her attorneys herein the association book and signature cards; she signed the cards and returned them and the book to the attorneys; she never signed

anything to release the money, and thought it took both signatures (her's and her father's) to release the money.

After Pope's death, appellant filed a complaint against the association and the bank to have them pay the money to her as the survivor named in the joint accounts, and to enjoin them from paying the money to anyone else. Thereupon appellee intervened, claiming the said funds as the sole beneficiary under the will of her deceased husband. The trial court entered a decree in favor of appellee, and this appeal follows.

The pivotal issue is whether, under the above set of facts, Pope had the right to change the joint accounts to his own name? Or, to state the same issue another way, did appellant have a vested interest in the joint accounts? It is our conclusion, after careful consideration of the facts and the applicable law, appellant had no vested right in the accounts and that Pope did have a right to change them back to his own name. It is not disputed that if the money belonged to Pope at his death it passed to appellee under his will.

As pertains to the funds in the association the issue here, we think, is controlled by the decision in the case of *Davis* v. *Jackson*, 232 Ark. 953, 341 S. W. 2d 762. There, Don L. Davis, a widower deposited $10,000 in a building and loan association in the name of "Don L. Davis or Patricia Jackson" (a granddaughter—appellee). Later he married appellant—Davis, and then had the association change the account to include the name of appellant instead of the name of appellee. Upon the death of Davis both parties claimed the money. The trial court held the granddaughter could recover because a joint tenancy had been created which could not be revoked at the pleasure of either party (to the account) alone. In reversing the trial court we made certain announcements which, we think, call for an affirmance of the case under consideration (as it pertains to the association account). In the cited case we held that Ark. Stats. § 67-820 (b) was applicable, and that it gave the depositor the right to change (during his lifetime) a joint account. We also called attention to *Ferrell, Ad-*

*ministratrix* v. *Holland,* 205 Ark. 523, 169 S. W. 2d 643, noting that a different result was reached there because the account had *not* been changed before the depositor died. Finally, in the cited case we find this conclusive statement: ''Appellee takes the view that one Mrs. Jackson's name was placed on the certificate, she had a vested interest in the property. This position cannot be maintained, for the statute itself precludes such a result.''

Based on the decision in the *Davis* case we must conclude therefore that appellant had no vested right in the account to which her name was added, and that Elmer Pope had the right to have the account placed back in his own name. It is apparent that the reasoning in the *Davis* case would have been the same if the word ''and'' instead of ''or'' had connected the names of the two payees.

Likewise, and for much the same reasons, we hold that the trial court was correct in awarding the bank deposit to appellee. Ark. Stats. § 67-521 reads, in pertinent part as follows:

''When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as *joint tenants,* and the same, together with all interest thereon, shall be held for the exclusive use of the person so named, and may be paid to either during the lifetime of both. . . . '' (Emphasis added.)

If, therefore, Pope had the right to draw out the money in the bank (in the name of him and appellant) then it can hardly be contended he had no right to change the account back to his own name. It is not disputed that he did make such a change here during his lifetime. This question of a right to change the account did not arise in the case of *Park* v. *McClemens, Executor,* 231 Ark. 983, 334 S. W. 2d 709, relied on to some extent by appellant. In that case the depositor made no attempt, during her lifetime, to change the account to her own name.

Since, as we have above concluded, Pope had a right, during his lifetime, to change the joint accounts, it must follow that he did not irrevocably give the money (accounts) to appellant.

This is true, because it is essential to a gift *inter vivos* that the giver part with all control over the gift.

Appellant contends that the trial court erred in permitting appellee to testify to certain conversations with her husband, in violation of the so-called deadman's statute. We need not discuss this contention since, in the opinion, we have not considered any of this testimony.

Affirmed.

JOHNSON, J., dissents.