SOUTHERN HELICOPTER SERVICE, INC. *v.* JONES.

5-3256                            379 S. W. 2d 10

Opinion delivered May 18, 1964.

*Cockrill, Laser, McGehee & Sharp* and *Burl C. Rotenberry,* for appellant.

*Tompkins, McKenzie & McRae,* for appellee.

ED. F. McFADDIN, Associate Justice. This is an action for damages resulting from personal injuries sustained by a little girl when struck by the rotor blades of a helicopter. The plaintiffs recovered judgment, and the defendants prosecute this appeal. The plaintiffs are Mary Gen Jones, a little 3-year-old girl, and her father, Arvin E. Jones; and the defendants are Southern Helicopter Service, Inc. and its employee, William F. Holland, who was the pilot of the helicopter.

Certain downtown merchants, desiring to stimulate business during the Christmas season, arranged to have "Santa Claus" arrive in Little Rock on Saturday morning, November 17, 1962. A helicopter, with "Santa Claus" aboard, was to land in a designated and roped off space on the southwest corner of Allright Parking Lot located between 6th and 7th Streets, and Center and Louisiana Streets, in the City of Little Rock. Allright Parking Lot occupies approximately two-thirds of the city block, the remaining or west third being occupied by the Downtowner Motel. A contract was made with the Southern Helicopter Service, Inc. to fly "Santa Claus" from the Little Rock Airport to the Allright Parking Lot. Several days prior to the designated date, Mr. Holland went to the parking lot and selected a landing site approximately 65 feet wide by 100 feet long in the southwest corner, and this space was roped off and policemen were present to keep people outside the landing area.

About ten A.M. on November 17th "Santa Claus" and Mr. Holland flew in a northerly direction over the designated landing place at an altitude of about 300 feet, and circled around for a landing in the designated space. When Mr. Holland reached the parking lot the second time, he decided that the roped off area next to the Downtowner Motel was too small for landing, and he was then so low that he could not gain sufficient altitude for another circle, so he landed in the southeast corner of the parking lot, being east of the roped off area. Fortunately, no one was injured in this hazardous landing.

Present to see the arrival of "Santa Claus" were a number of children and adults. This crowd had gathered around the roped off area because there was a platform and a loudspeaker, and prizes were to be given away. But when the helicopter landed outside the roped off area, the crowd immediately raced over toward the helicopter to see "Santa Claus." Mrs. Jones and her daughter, Mary Gen, with other companions, had been on 7th Street, and when they saw the helicopter land in the southeast corner of the parking lot they walked over to the helicopter to see "Santa Claus." Mrs. Jones had Mary Gen in her arms.

When the helicopter landed Mr. Holland applied the brakes and stopped the rotor blades, but left the engine of the helicopter running, as he intended to resume flight as soon as "Santa Claus" was safely out of the helicopter. Mr. Holland assisted "Santa Claus" in getting out of the helicopter and beyond the extent of the rotor blades; and by that time people had crowded so closely around the helicopter and under its blades that Mr. Holland saw it would be impossible for him to resume flight. Standing on the ground, he reached into the helicopter and turned off the engine switch, and when he did so, the rotor blades moved and Mary Gen Jones, being held up in her mother's arms, was struck in the face by a rotor blade and seriously injured.

Mary Gen Jones was hospitalized for some time. Mr. Jones sued for the hospital and doctor bills which he paid; and Mary Gen Jones, by her father as next friend, sued for her injuries and damages. The claimed acts of negligence of the defendants were: (a) in landing the helicopter in an unprepared and unguarded section of the parking lot; (b) in failing to rope off the area where the helicopter was landed; (c) in leaving the motor running in the helicopter while "Santa Claus" was being escorted away from it; (d) in failing to warn people in close proximity to the motionless rotor blades that when the engine was cut off the blades might move; and (e) in failing to fully set the brake on the rotor blades. The case was tried to a jury and resulted in a

verdict and judgment for Mr. Jones for $301.05 for doctors and hospital bills, and in $10,000.00 to Mary Gen Jones for her damages. From that verdict the appellants bring this appeal claiming errors in the giving of an instruction, in the refusing of instructions, and in the excessiveness of the verdict.

Although the cases involving helicopters[1] and involving persons injured from airplane propellers[2] are not numerous, nevertheless it is well recognized that in the absence of any special statute to a different effect, the general rules governing tort liability and negligence apply broadly in aircraft accident cases, including cases of death or injury arising from airplane collisions or near collisions, and many of the principles relating to civil liability for motor vehicle accidents, including those as to agency, the measure of care required, and negligence, are equally applicable to civil liability for aircraft accidents.[3] Webster's Dictionary defines helicopter: "An aircraft whose support in the air is derived solely from the reaction of a stream of air driven downward by one or more lifting rotors turning about substantially vertical axes." The helicopter here involved had one vertical axis to which were attached three rotor blades, each ten feet six inches in length, thus making a circle in excess of 21 feet about the shaft. The three rotor blades were arranged on the shaft so that when the helicopter was at rest one blade was only four feet six inches above the ground, another five feet two inches, and the third five feet eight inches. The questions here in issue do not challenge the general rules of law governing aircraft,

[1] N. Y. Airways, Inc. v. United States, 283 F. 2d 496.

[2] Cape Charles Flying Service, Inc. v. Nottingham, 187 Va. 444, 47 S. E. 2d 540; Strong v. Chronicle Pub. Co. (Calif.), 93 P. 2d 649; Maryland Cas Co. v. Stewart & Sons (La.), 100 So. 2d 912; Shattuck v. Mullin (Fla.), 115 So. 2d 597. Attention is called to a series of annotations: "Negligence in operation of airplane on takeoff," 74 A.L.R. 2d 615; "Negligence in operation of airplane in landing," 74 A.L.R. 2d 628; and "Liability for injury or damage from taxiing aircraft," 74 A.L.R. 2d 654. See also our case of Ratton v. Busby, 230 Ark. 667, 326 S. W. 2d 889, 76 A.L.R. 2d 751.

[3] Wilson v. Colonial Air Transport, 278 Mass. 420, 180 N. E. 212, 83 A.L.R. 329; 8 Am. Jur. 2d, p. 685, "Aviation" § 64; "Aviation Accident Law," by Charles S. Rhyne, p. 91.

but relate only to specific instructions and to the amount of damages.

I. *Instruction No. 12.* The Court gave the jury twenty-two instructions which covered nearly every possible phase of law applicable to such a case:[4] credibility of witnesses; negligence; contributory negligence; ordinary care; proximate cause; preponderance of the evidence; burden of proof, concurring negligence; measure of damages, etc. Among the other instructions the Court gave its Instruction No. 12, as follows:

"You are told that it was the duty of the pilot of the helicopter to exercise ordinary care in the operation, landing, and attendance of his plane to avoid injury to others if danger was apparent or reasonably to be expected. If you find from a preponderance of the evidence that danger to others did exist and was reasonably to be expected and further so find that Holland failed with respect to his duties and that such failure, if any, on his part, proximately caused the helicopter blade to strike

---

[4] We copy a portion of the Court's Instruction No. 1: "Members of the jury, you have followed closely the opening statements and the testimony in this case. Therefore you know what each side claims with respect to the cause or causes of the mishap and as to the alleged injuries. So it will not be necessary for me to recount in detail the respective contentions of the parties because they are revealed by the testimony, and well commented on in the opening statements.

"Now, with some factual and legal situations in the case the jury is relieved of any responsibility. For example: at the time of the mishap, it is agreed that William F. Holland was in charge of the helicopter, the property of Southern Helicopter Service, Inc., and was acting within the scope of his employment as its agent, servant, and employee. This would make Southern Helicopter chargeable with the negligence, if any, committed by Holland.

"Now, it is not claimed that the infant child was guilty of any negligence. As a matter of law she is too young to be charged with negligence. Any negligence on the part of Mrs. Arvin E. Jones is not chargeable to the father or the child, and would not affect any obligation which might exist on the part of the defendants to reimburse him for his medical expenses or to respond to the child for damages, unless you should find the mother's negligence, if any, was the sole proximate cause of the mishap. So, the plaintiff's legal right to recover depends on whether you find the defendant Holland guilty of negligence, if any, which proximately caused the injuries, if any, to the child.

"Now, in this case, Gentlemen, there are six controverted or disputed questions for your possible consideration, and in a desire to be of assistance to you here are those questions or interrogatories you may be called upon to answer when you retire to deliberate: . . ." (Here followed six specific interrogatories.)

Mary Gen Jones, then you will find him guilty of negligence which was a proximate cause of the mishap.[5]

In their brief the appellants say of this instruction:

"The Court's instruction No. 12 furnished the jury absolutely no guides whatever, but truly left the jury to its own devices in determining just what the duties of appellant Holland were with respect to the operation and handling of the helicopter. To charge the jury that the pilot was required to '. . . exercise ordinary care in the operation, landing and attention of his plane . . .', as the trial court did, simply does not provide the jury with any legal yardstick with which to measure the pilot's conduct in the context of the issues developed by the evidence. The terms, 'operation,' 'landing,' and 'attendance,' as used in the instruction, are so broad, general, and all encompassing, that the jury might have seized upon any number of real or imagined acts or omissions of the pilot as a basis for its verdict, irrespective of whether same constituted negligence or whether there was substantial evidence to support them."

We find no inherent error in the instruction; and if the appellants had wanted to pinpoint the instruction to certain actions of the pilot, the appellants could have asked such a specific instruction. These generalized, or so-called "Mother Hubbard," instructions are erroneous when there is no testimony offered to sustain every alle-

---

[5] The defendants' objection to this instruction was: "Defendants object generally and specifically to Court's Instruction No. 12 for the reason that it is abstract and misleading and gives the jury no guide or standard on which to base a finding of negligence; does not submit specific acts for the jury's determination whether the same were negligence, and in effect gives the jury a license to roam at will among the allegations of the complaint and the proof in the case and consider acts as negligent when as a matter of law those acts should not be submitted to the jury for the reason that there is no substantial evidence upon which they could base a finding of negligence in the doing or failure to do those acts, and hence such as to permit the jury to answer an interrogatory finding defendant Holland negligent for an act or acts upon which there is no substantial evidence to base such a finding under circumstances that it would be impossible to determine what act or acts the jury found to be negligent and hence does not restrict the jury to consideration of only those acts upon which there is substantial evidence to submit to the jury the question as to whether same were negligent."

gation of negligence as contained in the complaint. *Graysonia Nashville Lumber Co.* v. *Hopkins,* 113 Ark. 598, 168 S. W. 129; *Wisconsin & Ark. Lumber Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599. But when, as here, there was testimony to support each and every allegation of negligence contained in the complaint, then the defendants should have offered a more definite instruction, if such was desired. No such definite instruction was offered by the defendants and, failing to do so, the defendants cannot complain. In *Queen of Ark. Ins. Co.* v. *Malone,* 111 Ark. 229, 163 S. W. 771, we said: "It is true that the instructions given on this subject were general ones; but as the defendant failed to request correct instructions on the subject, it is in no position to complain because the instructions given by the Court were too general." In *Wallace* v. *Riales,* 218 Ark. 70, 234 S. W. 2d 199, the appellant did not request the court to submit to the jury a specific instruction, and we said: "A party failing to request a definite instruction is in no position to complain that one was not given." And in *Capital Transportation Co.* v. *Alexander,* 219 Ark. 419, 242 S. W. 2d 833, we said: "The issue of contributory negligence had been fully covered by general instructions, and the Court was not required to overemphasize this defense by devoting a separate charge to each act that might be thought to amount to negligence."

The pilot, Mr. Holland, admitted on the witness stand that the safe procedure would have been to cut off the motor when he landed:

"Q. Well, if you had followed the safe procedure which you have outlined, and to which you have testified, then the motor would have been off; all of the switches would have been turned; the blades could not have turned, is that right?

"A. Yes, sir.

"Q. And that would have ended any question about trouble, right?

"A. Yes, sir . . ."

The pilot admitted that he knew when he attempted to cut off the motor there might be a surge of power to affect the brake which had stopped the rotor blades; and he admitted that when he landed and pulled up the hand brake on the rotor blades he smelled the burning of the brake bands. All these admissions — and there were others—were, in themselves, pinpointing of negligence; so we find no reversible error in the giving of Instruction No. 12.

II. *Refusal To Give Defendants' Instructions Nos. 8 and 9.* These two refused instructions read:

"Instruction No. 8. You are instructed that you cannot find defendant Holland, pilot of the helicopter, guilty of negligence in landing the helicopter in the parking lot at the point where he did land the helicopter.

"Instruction No. 9. You are instructed you cannot find defendant Holland, pilot of the helicopter, guilty of negligence in failing to land the helicopter in the designated roped off area on the parking lot."

The appellants' argument on this point is two-pronged: (1) there was no evidence that it was negligence for the pilot to land where he did; and (2) even if the pilot was negligent in landing where he did, the action of Mrs. Jones in carrying the child under the extended helicopter blades was an intervening efficient cause of negligence which rendered remote the landing in the wrong place.

As to the first point—negligence in failing to land in the roped off place—the pilot admitted: "A. . . . Anytime that you bring a helicopter in, you are going to have people around it."[6] The fact that the pilot knew

---

[6] The pilot further testified: "Therefore, in the interests of safety is the reason I did that, plus an agreement to take the helicopter out of there once Santa Claus had got out. I didn't want to stay there, because I've seen it happen before. I don't know what it is, but anytime there is a helicopter down, they say they are not there to look at the helicopter, but the helicopter draws the biggest crowds.

"Q. But as you testified before, the safe procedure could have been done in approximately one minute.

"A. I would say not over two minutes.

people would crowd around the helicopter when it landed, is a good explanation as to why the designated place was roped off, with policemen there to keep the crowd away from a point of danger. So we find no merit in the first prong of the appellants' argument.

The second prong relates to the action of Mrs. Jones in carrying the child under the helicopter blades as an intervening efficient cause. Of course, any negligence on the part of Mrs. Jones cannot be imputed to the little child. The Court so instructed the jury; and as to that point there is no argument on this appeal. In Instruction No. 18 the Court, in effect, submitted to the jury the question of whether the act of Mrs. Jones was an efficient intervening cause of the injuries received by the little girl. This instruction read:

"You are instructed that even though you may find defendant Holland guilty of a negligent act or negligent conduct, if you further find that at the time of such negligent act or conduct, if any, on his part, plaintiff Mary Gen Jones was in a position of apparent safety and that she was placed in a position of risk, in which position she sustained injury by a negligent act or conduct on the part of her mother, not caused by or contributed to, but independent of any negligent act or conduct on the part of defendant Holland, then you are told that such negligent act or conduct, if any, on the part of defendant Holland would not be a proximate cause of the injuries sustained by Mary Gen Jones. If you so find from a preponderance of the evidence, you will answer 'No' to Interrogatory No. 2."

The Interrogatory No. 2 read:

"Do you find from a preponderance of the evidence that William F. Holland was negligent, and if so, was such negligence a proximate cause of the mishap? This can be answered 'Yes' or 'No'."

"Q. Now, that wasn't followed; you took Santa Claus out of the plane, walked off and came back?
"A. Yes, sir."

The jury answered the Interrogatory No. 2, "Yes"; so the jury found that Holland's negligence was the proximate cause of the injuries received by the little girl. In *Walton* v. *Tull*, 234 Ark. 882, 356 S. W. 2d 20, we quoted from *Hill* v. *Wilson*, 216 Ark. 184, 224 S. W. 2d 797, on this matter of an intervening act of a third person:

" 'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if . . . a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted.' "

The pilot admitted that he knew people were under the helicopter when he reached in to turn off the motor. Some of the people under the blades testified as to having to "duck" to avoid being hit; and one brave police officer grabbed the blades to prevent injury to others. There was evidence sufficient to support the jury's finding that there was no intervening efficient cause: it was all one continuous procedure; a series of errors, in landing in the wrong place, leaving the helicopter unattended to escort "Santa Claus" away, leaving the motor running, failing to adequately set the rotor brakes, and turning off the motor without getting persons from under the blades. Which was the proximate cause? All of these acts blended together to produce the injury to this little girl; and there was no error in the Court's refusal to give the appellants' Instructions Nos. 8 or 9.

III. *Excessiveness Of The Verdict.* Finally, the appellants argue that the verdict in favor of Mary Gen Jones for $10,000.00 is grossly excessive; and on this point we see no merit whatsoever. When she was struck she screamed and turned her face to her mother, blood gushed from her mouth and nose, she was hysterical, and, it was thought that she was bleeding to death. She was taken by ambulance to the hospital and given sedatives and a tetanus shot, her nose was stitched and

packed. Finally, she recovered sufficiently to be taken to her home in Nevada County; but the doctor who treated her testified that she would always have scars on her nose, which is depressed on the left side, and that she would always have black circles under her eyes. It was testified that as a result of the injuries she developed a nervousness, like biting her fingernails, which she had never experienced before. Discounting all the pain and suffering, this little girl has a flattening in the middle region of her nose, two scars on her nose, and a permanent discoloration under her eyes. If all this had happened to a little boy it might have been different; but where is the girl who does not want to be a beauty? Where is the little girl who does not aspire to be a Miss Arkansas or a Miss America? This little girl, with these scars and this discoloration, will go through life without the expectation that other little girls have in this regard. We refuse to say that the verdict is excessive.

Affirmed.

GEORGE ROSE SMITH, J., not participating.