C. E. LAWRENCE, ET AL v. DUANE LAWRENCE, ADMR.

5-4808                                                  437 S.W. 2d 457

Opinion Delivered February 24, 1969

*Curtis L. Ridgeway, Jr.* for appellants.

*Fitton, Meadows & Adams* for appellee.

CONLEY BYRD, Justice.    The issues here with reference to ownership of the joint and survivorship bank accounts arose under our law as it existed prior to the effective date of Act No. 78 of Acts of 1965.    See *Park v. McClemens,* 231 Ark. 983, 334 S.W. 2d 709 (1960). In holding that the joint and survivorship accounts belong to the estate of H. S. Lawrence, deceased, the trial court found that there was no intention on the part of H. S. Lawrence to create a survivorship account or a gift to appellants C. E. Lawrence and L. M. Lawrence.

The record shows that H. S. Lawrence, a long time resident of Searcy County, died at the age of 89 leaving surviving him 13 children.    Two of the children, appellants C. E. Lawrence and L. M. Lawrence, lived near their father and for the last 5 or 6 years alternated in caring for him—i.e., they would see that his meals were cooked, his fires were built and necessary wood was available to keep the fires burning.    Following the death of his wife, H. S. Lawrence on Nov. 8, 1962, caused his checking account in the Leslie State Bank, Leslie, Arkansas, to be placed in a joint and survivorship account with his son, L. M. Lawrence.    On the same date he also caused a savings account of $8,600, to be established under the same arrangement.    On April 18, 1963, H. S. Lawrence opened a joint and survivorship checking account in the Citizens Bank of Marshall, Arkansas, with his son L. M. Lawrence.    Thereafter on Sept. 21, 1964, H. S. Lawrence obtained a $10,000 certificate of deposit payable to H. S. Lawrence or C. E. Lawrence, either or the survivor.    H. S. Lawrence kept the certificate of deposit and saving account book in his possession until his death.

C. E. Lawrence was asked on what basis he claimed ownership of $10,000 certificate of deposit.    His answer was, "My dad put it in there in mine and his name and said, 'I would like for you to see that I am took care of' ".    When asked what he meant by saying that he would be taken care of with this $10,000, C. E. Lawrence

again said, "Well, he figured on getting sick, figured on big doctor bills, I guess, of course," and at another time upon being asked, "Well you said your dad, when he put in the money in there, said he was putting it in there so that you could take care of him?" Whereupon C. E. Lawrence again answered, "Well, yes." L. M. Lawrence was asked, whether he had advised the heirs that he would divide the money with them, his answer was, "Well in a round about way I imagine I might have after everything was said and done." At another time he testified as follows:

"Q. Did your Father have any instructions concerning this $8,600.00 in the Bank of Leslie, when he set it up in a joint account?

A. What do your mean?

Q. Well, your brother has told us that the father told him that he was putting it in so that you could use it to take care of him.

A. Yeah, he said he didn't know how long he was going to live and we didn't either, so he wanted us to be paid for our services when he passed away.

Q. He put this money in so that you could take care of him during his lifetime and help with his funeral expense?

A. I guess you might say that, yes."

On another occasion Mr. C. E. Lawrence was asked, "I take it, from your earlier testimony, Mr. Lawrence, that you are not now willing to divide the money that was in the Marshall bank with the other children?" His answer was, "This thing will have to clear up pretty well, then I will make my decision on that." When asked if this was not inconsistent with his father's statement to him, he answered, "I don't think so. Anyway, how did I know but what I was going to have to spend

everything else I had to see that he was taken care of, that was my promise and that is what I would have done, that is what I had to do.''   Letters written by C. E. Lawrence and L. M. Lawrence to members of the family subsequent to the father's death acknowledge that they were holding or had control of the monies involved, but there was no outright assertion that the funds belong to them.

As pointed out in *Park* v. *McClemens*, 231 Ark. 983, 334 S.W. 2d 709 (1960), the ownership of the accounts here must turn on whether H. S. Lawrence intended to create or vest title in the survivor.   There is testimony in the record from which the trial judge could have found the issues either way.   The chancellor observed the witnesses as they testified.   We are not in a position to say that his finding on this issue is contrary to the preponderance of the evidence.

Affirmed.