TESCH v. MILLER.

5-1081                                    296 S. W. 2d 392

Opinion delivered December 10, 1956.

*Gordon H. Sullivan* and *Harry C. Robinson,* for appellant.

*George W. Shepherd,* for appellee.

J. Seaborn Holt, Associate Justice. There is involved in this action the ownership of a deposit, in the amount of $3,016, in the Commercial National Bank of Little Rock, Arkansas. Herman Tesch Woita died testate June 28, 1954. He was survived by a brother, Otto L. Tesch, a sister, Anna B. Ewing, and Mildred Jones Miller, a niece. Under his will he gave to Otto, Anna and Mildred equal shares in certain pieces of real estate. He also provided that: "All the rest and residue of all personal property of which I may die possessed, I also give, devise and bequeath to the above mentioned three persons, except that if I should own an automobile at the time of my death, then I give, devise and bequeath said automobile to my niece, Mildred Jones Miller." The will designated Mildred Jones Miller, executrix, to serve without bond.

Mildred Jones Miller had lived with the deceased, at intervals, for about four years prior to his death. There was evidence that she and her uncle were very close and she testified that he was like a father to her. For approximately six months preceding his death she was his nurse at his home and at the hospital and it appeared that he wanted no one else to wait on him. The deceased was suffering with cancer from January 1954 until his death.

The record reflects that on May 3, 1951, Herman Tesch Woita (the deceased) accompanied his niece, Mildred to the Commercial National Bank, Little Rock, Arkansas, and there with the advice of an employee of the bank (Miss Clark) set up a joint bank account with right of survivorship. The signature card furnished by the bank, which both signed provided:

". . . SIGNATURE

Mr. /s/ Herman Tesch Woita

Mr. Herman Tesch-Woita

By /s/ Mildred Jones Miller

ADDRESS: 901 Welch St., City.

AS JOINT TENANTS WITH RIGHT OF SURVI-
VORSHIP AND NOT AS TENANTS IN COMMON
Above please find 2 duly authorized signatures, which
you will recognize in the payment of funds or the trans-
action of other business in our account.

/s/ Herman Tesch Woita

. . .

Miss Miller authorized to sign 5-3-51.  She is niece of
H. Tesch-Woita."

Upon the death of Herman Tesch Woita there was a bal-
ance left in the above account of $3,016, which the ap-
pellee, Mildred Jones Miller, claimed, as the survivor of
the above joint account.  Upon a trial the Probate Court
sustained her contention, and held that she was entitled
to this money.  She further contended that she was en-
titled to $872 for alleged services in nursing and caring
for the deceased in his last illness.  This claim for serv-
ices was denied by the trial court.

The case comes to us on direct appeal of appellants
and the cross-appeal of appellee.  Appellants, Otto L.
Tesch and Anna B. Ewing, contended in the trial court,
and here on appeal, that this joint bank account should
have been declared the property of the estate; that the
decision of the Probate Judge does not meet the require-
ments of a joint bank account with right of survivorship
as laid down by this court as to: unity of interest; unity
of title; unity of time; and unity of possession; and that
the evidence does not support appellee's contention that
a joint bank account with right of survivorship was
created.

We have concluded that the decree of the trial court
should be affirmed on both direct and cross appeal.  Our
statute, Ark. Stats. 1947, § 67-521 provides: "Deposits
in two names. — When a deposit shall have been made
by any person in the name of such depositor and another
person and in form to be paid to either, or the survivor
of them, such deposit thereupon and any additions there-
to made by either of such persons, upon the making
thereof, shall become the property of such persons as

joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the person so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt of acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof. (Acts 1937, No. 260, § 1, p. 928; Pope's Dig., § 727a.)'' Under the clear and unambiguous terms of the signature card we hold that a joint account with right of survivorship was set up and clearly intended by the deceased. Miss Veneta Clark (Secretary, Commercial National Bank) testified: ''Q. (Mr. Shepherd) Now, according to this signature card, Miss Clark, Mrs. Miller was authorized to sign on account May 3rd, 1951? A. That is right. Q. She is the niece of Herman Tesch-Woita, as typed on the card? A. Yes, sir. Q. Who typed it on there? A. I did, myself. Q. Did you talk to Mr. Tesch-Woita about the effect of this, just what he was doing? A. Yes, I did. Q. I wish you would tell the Court the conversation between you. A. As far as I can remember it. Q. Was Mrs. Miller present at the time? A. Yes, both Mr. Tesch-Woita and Mrs. Miller were there. Q. Tell the court what your conversation was with him, what was said. A. He told me he wanted his niece, Mrs. Miller, to sign on a joint account. I brought the card out, he signed it, then he said, 'I want Mrs. Miller to have this money without any trouble.' So I had him sign it then I stamped the notation on it that made it a joint survivorship account. Q. Did you explain that to him? A. Yes, sir, I did. Q. Do you remember that conversation? A. Yes, sir, it was just the way I told you. Q. Did he ask you what the effect of it would be? A. No, he simply said he wanted his niece to have his money after he died, without any trouble, without having to go to court about it. Q. Did you explain to him what a joint account meant? A. Yes, I told him that once

she signed it as a joint account that either one could draw it out the same as the other, that she had as much authority over it as he did. Q. Now, that is all that is on that signature card, the two signatures and quote 'as joint tenants with right of survivorship and not as tenants in common.' A. Yes, sir. Q. There is nothing said about paying after death on that card? A. Oh, no.'' There was testimony from a number of other witnesses tending strongly to corroborate Miss Clark. Herman Tesch Woita, in a letter to his brother and sister, dated April 9, 1953, said: "As before stated Mildred is joint signer with me to get into the box at ANY TIME. She also is joint signer with me on a savings account I have in the same bank. She and her signature can cash that savings account at ANY TIME.''

Following the two signatures on the card is, as indicated, the written statement "as joint tenants with the right of survivorship and not as tenants in common.'' There was nothing on this card directing, or, even indicating, that this account should be ineffective until the death of the deceased, Herman Tesch Woita. This fact clearly distinguishes this case from *Powell* v. *Powell,* 222 Ark. 918, 263 S. W. 2d 708, strongly relied upon by appellants. For in the Powell case we said: "The signature card reads: 'Title of account, S. F. Powell, Almedia Powell, W. E. Powell.' These names were inserted by Lynch, and the three authorized signatures are appended. But to the right of these signatures, with a bracket cutoff, there was written: 'After death of S. F. Powell.' ''

The principles of law announced by this court in the case of *Pye* v. *Higgason,* 210 Ark. 347, 195 S. W. 2d 632, are applicable and controlling here. Under facts similar, in effect, to the present case, we held: "Banks and Banking—Joint Accounts.—Money deposited in bank in the names of two persons jointly with right of survivorship is a joint deposit and, on the death of one of the parties, the survivor becomes entitled to the whole. 2. Statutes.—Section 727a. Pope's Digest, was enacted for the purpose of declaring the relationship of the parties

to a joint bank account and fixing the right thereto on the death of one of the parties. 3. Joint Tenancy.— Survivorship is one of the results of joint tenancy. 4. Joint Tenancy—Right of Survivor.——Where appellee and deceased had a joint bank account with right of survivorship, appellee became, on the death of the other joint depositor, entitled to the whole, and appellants as collateral heirs of deceased have no right or title thereto.' The headnote in this same case as reported in 195 S. W. 2d 632 is in this language: "Where bank deposits were made in names of intestate and his niece as a joint account payable to either of them, and, in event of death, payable to the survivor, deposits did not become property of intestate's estate on his death but passed by operation of law to the niece as the survivor of a joint tenancy. Pope's Digest 727a (which is our § 67-521 of 1947 Ark. Stats. Anno.)"

As to appellee's claim for services rendered in nursing her uncle, the burden was on her to prove that such services were rendered under a contract, either expressed or implied. We think she has failed to sustain this burden, on the evidence presented. It appears that her uncle was rather generous in providing for her. There is a strong presumption that such services were gratuitous, since they were rendered by one member of the family for another. The rule is stated in *Williams* v. *Walden,* 82 Ark. 136, 100 S. W. 898, in this language: "The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or the hope of pecuniary reward. 'Courts are reluctant to infer a pecuniary recompense from the performance of filial or parental duties such as humanity enjoins.' Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract, expressed or implied, for such consideration. Page on Cont. p. 1183, § 788; Schouler, Dom. Rel. § 269; Rodgers on Dom. Rel.,

§ 483; 1 Beach on Contracts, § 655; *Reynolds* v. *Reynolds*, 92 Ky. 556; *Zimmerman* v. *Zimmerman*, 129 Pa. 229; In re *Kirkpatrick's Estate*, 34 S. C. 255. See also *Lewis* v. *Lewis*, 75 Ark. 191 . . ."

Affirmed on both direct and cross appeal.