RATLIFF *v.* RATLIFF, ADM'X.

5-3050                                     372 S. W. 2d 216

Opinion delivered November 11, 1963.

*Paul Jameson* and *O. E. Williams,* for appellant.

*James R. Hale* and *Glen Wing,* for appellee.

GEORGE ROSE SMITH, J. The appellee, as administratrix of the estate of her husband, Charles Ratliff, inventoried as an asset of the estate a savings account in a Prairie Grove bank. The appellants, Ratliff's son and daughter, excepted to the inventory, contending that the bank account had been a joint account with survivorship which did not become part of the estate. The only question here is whether the probate court was right in holding that Ratliff did not take the necessary steps to create a right of survivorship.

Ratliff opened an account in this bank many years ago, at least as far back as 1929. At that time the bank did not use signature cards, relying instead upon its employees' familiarity with every depositor's signature.

On October 21, 1961, Ratliff went to the bank, made a deposit of $970.25, and directed the assistant cashier, Mrs. Broyles, to add the names of Ratliff's son and daughter to the account. The bank had on hand two forms of printed signature cards that might have been used. One by its language would have created a joint account with survivorship. The other would merely have given the son and daughter the right to check against the account, with any balance in the account at Ratliff's death becoming part of his estate.

Mrs. Broyles did not use a signature card at all. There was a ledger sheet for the account, showing the date and amount of each deposit and withdrawal, together with the resulting new balance. Mrs. Broyles wrote above Ratliff's name at the top of the ledger sheet, "Mrs. N. Edith Matthews or Herbert L. Ratliff." She also inserted a typewritten notation, "Names added by Mr. Ratliff 10-21-61." There is some indication, but no direct proof, that the two new names were also written in the passbook for the account.

Ratliff died in 1962, survived by his widow and the two children (and perhaps by a third heir, the adopted child of a deceased son. See case note, 15 Ark. L. Rev. 194). The estate was valued at $13,064.73, the principal assets being a homestead worth $7,500 and this $3,909.01 bank account.

Apart from the transaction between Ratliff and Mrs. Broyles there is evidence indicating that Ratliff thought his two children would be entitled to the account at his death. First, he did not tell them about having added their names to the account, which suggests that he did not mean for them to have any control over the account until his own death. Secondly, six weeks after the account was changed Ratliff wrote out a statement, perhaps intended as a will, in which he mentioned his other property but, significantly, made no reference to the savings account. In view of all the proof we may assume for the purpose of this opinion that when Ratliff went to the bank on October 21, 1961, he intended to change the account to a joint one with a right of survivorship in his children. That intention, however, was not fully disclosed, for, according to the testimony, Ratliff merely instructed Mrs. Broyles to add the two names to the account.

At common law the action taken on October 21 would not, according to the great majority of the courts. have created survivorship rights in the appellants. The various common law theories are discussed in Professor Brown's work on Personal Property, § 65. We are not now concerned with the common law, however, for in Arkansas the field has been covered by statute:

"When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same . . . shall be held for the exclusive use of the person[s] so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; . . ." Ark. Stat. Ann. § 67-521 (Repl. 1957).

The statute explicitly and unmistakenly requires that the deposit be made "in form to be paid to either, or the survivor." Admittedly that requirement was not

observed here. The problem is whether the omission may be supplied by extrinsic facts showing that the depositor really intended to create a joint account with survivorship.

We think the trial court was right in holding that Ratliff did not take the minimum action essential to the creation of a right of survivorship. We need not hold, as the New York courts do under a similar statute, that there must be a strict and literal compliance with the wording of the act. *In re Fonda's Estate,* 206 App. Div. 61, 200 N.Y.S. 881. We do hold that there must be a substantial compliance.

Our earlier cases point to this conclusion. We lay aside the matter of joint accounts between husbands and wives, for such an account is a tenancy by the entirety, with a right of survivorship that is not derived from the statute. *Black* v. *Black,* 199 Ark. 609, 135 S. W. 2d 837. In other situations when we have found a right of survivorship the opinion has almost always recited facts showing that the statute was complied with, in that the account was payable to either depositor or the survivor. *Pye* v. *Higgason,* 210 Ark. 347, 195 S. W. 2d 632; *Vincent* v. *Vincent,* 224 Ark. 449, 274 S. W. 2d 772; *Tesch* v. *Miller,* 227 Ark. 74, 296 S. W. 2d 392. The facts were not fully stated in *Von Tungeen* v. *Chapman,* 233 Ark. 219, 343 S. W. 2d 782. We referred only to the *prima facie* intent indicated by the signature card, but the record in that case shows that the signature card created an account "in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common." So there was substantial compliance with the statute.

The appellants insist that Ratliff's intention should be of controlling importance. This matter of the depositor's intention was thoroughly considered in *Park* v. *McClemens,* 231 Ark. 983, 334 S. W. 2d 709. The case involved four bank accounts. Three of them were evidenced by signature cards conforming to the statute and creating a *prima facie* case for a right of survivorship. The proof showed, however, that the depositor, Mrs.

Witten, had not really meant to create such a right. We therefore held that the *prima facie* case for survivorship had been overcome.

The fourth account in the *Park* case was like the one now before us, in that it was not in form payable to either depositor or the survivor. With reference to that account we added language which, if it were not for the possibility that it was dictum, would be absolutely controlling in the case at bar: "We point out also that in any event (and regardless of the intention of Mrs. Witten) the Chancellor's finding must be affirmed in regard to the $2,159.59 Savings Account No. 4931 in the Texarkana National Bank, because there is no language on the signature card creating a joint account with the right of survivorship."

Dictum or not, this is a correct interpretation of the statute. A joint account with survivorship is similar to a will in that both are statutory devices by which property may be disposed of at death. In each case certain minimum formal action in the exercise of the statutory privilege has been required by the legislature, doubtless to avoid the dangers of perjury and the uncertainties of parol evidence after death has sealed the lips of the person principally concerned. The chief safeguard with respect to a joint bank account is the requirement that it be in form payable to either depositor or to the survivor. In the case at hand that essential condition to a right of survivorship is absent. Unless we are to strike an important clause from the statute, which we are not at liberty to do, we must conclude that Ratliff failed to take the necessary steps to create a joint account with the right of survivorship.

Affirmed.

ROBINSON and JOHNSON, JJ., dissent.

SAM ROBINSON, Associate Justice (dissenting). The majority concedes that the evidence in this case proves that in setting up the joint bank account it was the inten-

tion of the depositor, Charles Ratliff, that his son and daughter should have the right of survivorship in the account; that a joint tenancy was intended. But the majority holds that the depositor did not take the steps necessary to accomplish his intention. I do not agree. I think the intention of the depositor should prevail.

Here, the evidence is overwhelming that it was the intention of the depositor to make his son and daughter owners of the account as joint tenants. The majority does not contend that the evidence shows otherwise, but say, in effect, that it was admitted that the account was not set up in proper form to constitute a joint tenancy. In my opinion, the record in this case does not show such admission. In fact, appellants stoutly contend that the account as set up by their father is sufficient to constitute a joint tenancy under the provisions of our statute, Ark. Stats. 67-521. The account was set up in form to be paid to either the father, or the son or daughter, or the survivor of them. The bank would have honored a check drawn by either of them, or the survivor, as was done in *Black* v. *Black,* 199 Ark. 609, 135 S. W. 2d 837, and *Park* v. *McClemens,* 231 Ark. 983, 334 S. W. 2d 709.

What more was necessary? The statute makes no other requirement in order to make an account a joint tenancy. If there is some particular form that a depositor has to fill out to make an account a joint tenancy, the majority should spell out what that form is. The statute provides for none. This court has held heretofore that the filling out of a form, furnished by the bank for the very purpose of providing for survivorship, was not sufficient to bring the account within the purview of the statute, where there was parole evidence proving that it was not the intention of the depositor to create a joint tenancy in the account. *Park* v. *McClemens, supra.* There, it was held that the intention of the depositor controlled, and not the printed matter on the signature card that was furnished by the bank. To the same effect is *Powell* v. *Powell,* 222 Ark. 918, 263 S. W. 2d 708.

Now this court is holding that there is no right of survivorship when the evidence proves overwhelmingly

that it was the intention of the depositor to create the right of survivorship in the money. The majority points out that under the common law the account would not be owned as a joint tenancy, but it is also pointed out that we are not dealing with a joint tenancy created by the common law, but one provided for by statute.

It was the intention of the depositor, and as I read the record, it was the understanding of the bank that the account was payable to appellants, or their father, or the survivor. Mr. Delford Rieff, president of the bank testified:

"Q. Let's go back to my original question then: Just state from the ledger sheet who would have been permitted to make withdrawals on that account on and after October 21, 1961?

A. Mr. Ratliff, Edith Matthews or Herbert Ratliff." In these circumstances the account became a joint tenancy. The statute makes it a joint tenancy. The statute uses words of art "joint tenancy". Such words are to be construed in their technical meaning. It is said in 50 Am. Jur. 265: "Technical words and phrases which have acquired a peculiar and appropriate meaning in law, cannot be presumed to have been used by the legislature in a loose popular sense, but, to the contrary, have been presumed and assumed to have been used according to its legal meaning, and will ordinarily be interpreted, not in its popular, but in its fixed legal sense and with regard to the limitations which the law attaches to them." Thus, when the legislature provided for a joint tenancy in the account, it automatically provided that one who owns as a joint tenant has the right of survivorship.

In 14 Am. Jur. 79, it is said: "An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship . . .". In *Ferrell* v. *Holland*, 205 Ark. 523, 169 S. W. 2d 643, it was pointed out that there can be a joint tenancy in almost any kind of personal property,

and that survivorship is one of the essential results of joint tenancy. In 48 C.J.S. Joint Tenancy § 1, p. 910, it is said: "Survivorship is the distinctive characteristic of an estate in joint tenancy."

In 50 Am. Jur. 272, it is said: "When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous, since there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless."

Our statute, Ark. Stats. 67-521, adopted in 1937, providing for joint tenancy in bank accounts, was apparently adopted from the State of Missouri. (Mo. Rev. Stats., Vol. 3, Sec. 362.470, adopted by the State of Missouri in 1915.) The Arkansas and Missouri statutes are identical, word for word. The Missouri court has held that a signature card signed by a depositor constitutes a *prima facie* showing of joint tenancy in the account, but such *prima facie* case is subject to rebuttal. *Kaimann's Estate*, 229 S. W. 2d 527 (1950). We have held the same thing. In *Von Tungeen* v. *Chapman*, 233 Ark. 219, 343 S. W. 2d 782, the court said: "Reviewing the evidence on trial *de novo* here, we find the record utterly bare of evidence to overcome the *prima facie* intent which we hold the signature card creates as to the existence of a joint tenancy."

The Missouri case of *Princeton State Bank* v. *Wayman,* 271 S. W. 2d 600 (1954), is directly in point with the case at bar. In that case no signature card or other writing was used evidencing the kind of joint account that was established. The Missouri court held that the Missouri statute 362.470, identical with our statute 67-521, providing for joint tenancy, applied because it was shown by the evidence that it was the intention of the depositor that the account be held as a joint tenancy. There, the court said: "It is the intention that controls." The court further said that there was no statutory presumption, but that the burden was on those seeking to

establish joint tenancy to prove their contention by a preponderance of the evidence, and that the evidence in that case proved the joint tenancy. Here, the majority apparently concedes that appellants made such proof.

Since I believe that the intention of the depositor should control, I respectfully dissent.

Mr. Justice Johnson joins in this dissent.